**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KAYA HUDGINS,** | ) | |
| **Plaintiff,** | ) | **Case No. 1:23-cv-00218** |
| | ) | |
| **v.** | ) | |
| | ) | **Judge Matthew F. Kennelly** |
| **BOARD OF EDUCATION OF THE CITY OF CHICAGO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

| | | |
|---|---|---|
| **MARIYAH GREEN and SHAVON GIBSON** | ) | |
| | ) | **Case No. 1:23-cv-00646** |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Judge Matthew F. Kennelly** |
| | ) | |
| **BOARD OF EDUCATION OF THE CITY OF CHICAGO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
COMBINED MOTIONS TO DISMISS THE RELATED CLAIMS OF
<u>KAYA HUDGINS, MARIYAH GREEN, and SHAVON GIBSON</u>**

Date: March 31, 2023

Mark S. Mester (IL Bar No. 6196140)
  mark.mester@lw.com
Johanna Spellman (IL Bar No. 6293851)
  johanna.spellman@lw.com
Renatta Gorski (IL Bar No. 6332737)
  renatta.gorski@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Carolyn M. Homer (*pro hac vice*)
  carolyn.homer@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

*Counsel for Defendant The University of Chicago*

James J. Sipchen (IL Bar No. 6226113)
  jsipchen@pretzel-stouffer.com
Pretzel & Stouffer, Chartered
1 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
Telephone: (312) 346-1973
Facsimile: (312) 346-8242

*Counsel for The David Lynch Foundation*

Elizabeth K. Barton (IL Bar No. 6295848)
  ekbarton@cps.edu
Kaitlin T. Salisbury
  ktsalisbury@cps.edu
Christina L. Rosenberg
  crosenberg@cps.edu
Board of Education of the City of Chicago
  Law Department
1 N. Dearborn Street, Suite 900
Chicago, Illinois 60631
Telephone: (773) 553-1700

*Counsel for Board of Education of the City of Chicago*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND ...................................................................................2

        A.    Related Quiet Time Litigation .........................................................................2

        B.    Quiet Time In Chicago Public Schools............................................................2

        C.    The David Lynch Foundation ..........................................................................3

        D.    The University Of Chicago...............................................................................3

        E.    Plaintiffs' Participation In Quiet Time .............................................................4

            1.    Kaya Hudgins.......................................................................................4

            2.    Mariyah Green .....................................................................................5

            3.    Shavon Gibson .....................................................................................5

III.    ARGUMENT.............................................................................................................6

        A.    Plaintiffs' Federal-Law Claims Are Partially Time-Barred...................................6

            1.    Shavon Gibson's Section 1983 Claims Are Time-Barred ........................6

            2.    Mariyah Green's Section 1983 Claim Is Time-Barred Against The University..............................................................................................8

        B.    The Complaints Fail To State A Section 1983 Claim.............................................9

            1.    The Complaints Fail To Plead Section 1983 Liability Under *Monell* ...............................................................................................10

                a.    Board...................................................................................11

                b.    DLF ....................................................................................12

                c.    University............................................................................13

            2.    The Complaints Fail To Allege State Action By DLF Or The University...........................................................................................15

            3.    Plaintiffs' Legal Remedies Under Section 1983 Are Limited To Nominal Damages................................................................................18

                a.    Hudgins Fails To Allege Compensatory Damages.......................19

**Page**

           b.       Green Fails To Allege Compensatory Damages...........................20

C.      Plaintiffs' State-Law Claims Are Time-Barred.......................................................20

      1.     Plaintiffs' IRFRA And Illinois Common Law Claims Are Subject To A 1-Year Statute Of Limitations ...........................................................20

      2.     Plaintiff Shavon Gibson's State-Law Claims Are Time-Barred................21

      3.     Plaintiffs Mariyah Green's And Kaya Hudgins's State-Law Claims Are Time-Barred..................................................................................22

D.      The Complaints Fail To State An IRFRA Claim.....................................................23

      1.     Damages Do Not Exist As An IRFRA Remedy ......................................23

      2.     IRFRA Does Not Permit Claims Against Non-Government Entities........24

      3.     In The Alternative, The IRFRA Claim Is Barred By *Monell* ....................25

E.      Plaintiffs Fail To State A Claim For Common Law And Constitutional Law Duties...............................................................................................................25

      1.     Plaintiffs Are Not Third-Party Contract Beneficiaries .............................25

      2.     Plaintiffs Have No Private Right Of Action for Damages Under The Illinois Constitution ...........................................................................27

IV.      CONCLUSION..................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.J. v. Butler Ill. Sch. Dist. 53*,
2018 WL 1469005 (N.D. Ill. Mar. 26, 2018) ............................................................ 13

*Am. Islamic Ctr. v. City of Des Plaines*,
32 F. Supp. 3d 910 (N.D. Ill. 2014) ......................................................................... 23

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) ........................................................................................ 7, 9, 21

*Anderson v. Simon*,
217 F.3d 472 (7th Cir. 2000) ...................................................................................... 9

*Baker v. Miller*,
636 N.E.2d 551 (Ill. 1994) ........................................................................................ 27

*Banks v. Dougherty*,
2010 WL 747870 (N.D. Ill. Feb. 26, 2010) .............................................................. 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................... 6

*Biggs v. Village of Dupo*,
892 F.2d 1298 (7th Cir. 1990) .................................................................................. 19

*Black by Black v. Indiana Area Sch. Dist.*,
985 F.2d 707 (3d Cir. 1993) ..................................................................................... 17

*Bonnstetter v. City of Chi.*,
2014 WL 3687539 (N.D. Ill. July 24, 2014) ............................................................ 27

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) ...................................................................................... 6

*Calhoun v. Ramsey*,
408 F.3d 375 (7th Cir. 2005) .................................................................................... 10

*Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*,
559 F.3d 671 (7th Cir. 2009) ...................................................................................... 7

*Carlson v. Rehab. Inst. of Chi.*,
50 N.E.3d 1250 (Ill. App. Ct. 2016) ......................................................................... 26

*Case v. Milewski*,
327 F.3d 564 (7th Cir. 2003) ............................................................................... 15, 16

**Page(s)**

*City of Canton, Ohio v. Harris*,
   489 U.S. 378 (1989) ................................................................................................ 11

*Crabtree v. Experian Info. Sols., Inc.*,
   2018 WL 1872112 (N.D. Ill. Apr. 17, 2018), *aff'd*, 948 F.3d 872 (7th Cir. 2020) .................. 19

*Craig v. City of Chi.*,
   2011 WL 1196803 (N.D. Ill. 2011) ....................................................................... 17

*Cunningham v. Southlake Ctr. for Mental Health, Inc.*,
   924 F.2d 106 (7th Cir. 1991) ................................................................................ 18

*Davila v. City of Chi.*,
   2018 WL 5024910 (N.D. Ill. Oct. 17, 2018) ........................................................... 8

*Denius v. Dunlap*,
   330 F.3d 919 (7th Cir. 2003) ................................................................................ 19

*Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*,
   340 F.3d 605 (8th Cir. 2003) ................................................................................ 14

*Draper v. Martin*,
   664 F.3d 1110 (7th Cir. 2011) ................................................................................ 7

*Estate of Novack ex rel. Turbin v. Cnty. of Wood*,
   226 F.3d 525 (7th Cir. 2000) ................................................................................ 11

*Estate of Sims ex rel. Sims v. Cnty. of Barbeau*,
   506 F.3d 509 (7th Cir. 2009) ................................................................................ 11

*Estate of Willis v. Kiferbaum Constr.*,
   830 N.E.2d 636 (Ill. App. Ct. 2005) ..................................................................... 26

*Evans v. Torres*,
   1996 WL 5319 (N.D. Ill. Jan. 4, 1996) ................................................................. 17

*Ferguson v. McKenzie*,
   202 Ill.2d 304, 313 (2001) .................................................................................... 22

*Gable v. City of Chi.*,
   296 F.3d 531 (7th Cir. 2002) ................................................................................ 10

*Glidden v. Chromalloy Am. Corp.*,
   808 F.2d 621 (7th Cir. 1986) ................................................................................. 7

*Goza v. Rainmaker Campground, Inc.*,
   2014 WL 5543989 (C.D. Ill. Nov. 3, 2014) .......................................................... 22

iv

**Page(s)**

*Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*,
570 F.3d 811 (7th Cir. 2009) ........................................................................... 15

*Horina v. City of Granite City, Ill.*,
538 F.3d 624 (7th Cir. 2008) ........................................................................... 18

*In re Dairy Farmers of Am., Inc. Cheese Anti. Litig.*,
2015 WL 3988488 (N.D. Ill. June 29, 2015)..................................................... 8

*In the Matter of Wade*,
969 F.2d 241 (7th Cir. 1992) ............................................................................. 6

*Iskander v. Vill. Of Forest Park*,
690 F.2d 126 (7th Cir. 1982) ........................................................................... 11

*J.K.J. v. Polk Cnty.*,
960 F.3d 367 (7th Cir. 2020) ........................................................................... 14

*Jackson v. Marion Cty.*,
66 F.3d 151 (7th Cir. 1995) ............................................................................... 6

*Janus v. Am. Fed'n of State, Cty. & Mun. Emps.*,
942 F.3d 352 (7th Cir. 2019) ............................................................................. 7

*Johnson v. Cook Cnty.*,
526 F. App'x 692 (7th Cir. 2013)............................................................... 10, 12

*Klein v. Vill. of Mettawa*,
2014 WL 1661631 (N.D. Ill. April 25, 2014) ............................................. 24, 27

*Kole v. Vill. of Norridge*,
941 F. Supp. 2d 933 (N.D. Ill. 2013).............................................................. 24

*L.P. v. Marian Cath. High Sch.*,
852 F.3d 690 (7th Cir. 2017) ........................................................................... 16

*Linda Constr. Inc. v. Allied Waste Indus.*,
2017 WL 1196889 (N.D. Ill. March 31, 2017) ................................................ 17

*Listecki v. Official Comm. of Unsecured Creditors*,
780 F.3d 731 (7th Cir. 2015) ..................................................................... 24, 25

*Marijan v. Univ. of Chi.*,
2018 WL 3463272 (N.D. Ill. July 18, 2018) .................................................... 15

*McClure v. Owens Corning Fiberglas Corp.*,
188 Ill.2d 102 (1999)....................................................................................... 18

**Page(s)**

*Memphis Cmty. Sch. Dist. v. Stachura*,
  477 U.S. 299 (1986) ................................................................................................ 18

*Monell v. Dept. of Soc. Servs.*,
  436 U.S. 658 (1978) ................................................................ 1, 9, 10, 13, 14, 15, 25

*Murphy v. Mount Carmel High Sch.*,
  543 F.2d 1189 (7th Cir. 1976) ................................................................................. 15

*Nekolny v. Painter*,
  653 F.2d 1164 (7th Cir. 1981) ................................................................................. 20

*O'Brien v. Vill. of Lincolnshire*,
  955 F.3d 616 (7th Cir. 2020) ..................................................................................... 6

*O'Gorman v. City of Chi.*,
  777 F.3d 885 (7th Cir. 2015) ..................................................................................... 6

*Ottaviano v. Home Depot, Inc., USA*,
  701 F. Supp. 2d 1005 (N.D. Ill. 2010)..................................................................... 21

*Palmer v. Stassinos*,
  236 F.R.D. 460 (N.D. Cal. 2006) ............................................................................... 8

*Portwood v. Ford Motor Co.*,
  183 Ill.2d 459 (1998)............................................................................................... 21

*Prince v. Campbell*,
  314 F. Supp. 2d 793 (N.D. Ill. 2004)....................................................................... 21

*Rendell-Baker v. Kohn*,
  457 U.S. 830 (1982) ................................................................................................ 17

*Richard v. Lukensmeyer*,
  1999 WL 261835 (N.D. Ill. Apr. 12, 1999).............................................................. 27

*Scott v. Peterson*,
  2010 WL 3173001 (N.D. Ill. Aug. 11, 2010) ...................................................... 19, 20

*Sizelove v. Madison-Grant United Sch. Corp.*,
  597 F. Supp. 3d 1246 (S.D. Ind. 2022)..................................................................... 20

*Sossamon v. Texas*,
  563 U.S. 277 (2011) ................................................................................................ 23

*Spiegel v. McClintic*,
  916 F.3d 611 (7th Cir. 2019)................................................................................... 17

**Page(s)**

*Stevens v. Hous. Auth. of South Bend, Ind.*,
663 F.3d 300 (7th Cir. 2011) ................................................................................... 19

*T.S. v. Twentieth Century Fox Television*,
2017 WL 4620841 (N.D. Ill. Oct. 16, 2017) ............................................................ 18

*Tanner v. City of Chi.*,
2021 WL 197422 (N.D. Ill. 2021) ............................................................................ 13

*Teale v. Sears, Roebuck and Co.*,
66 Ill.2d 1 (1976) ..................................................................................................... 24

*U.S. v. Ibarra*,
502 U.S. 1 (1991) ....................................................................................................... 9

*Vickery v. Jones*,
100 F.3d 1334 (7th Cir. 1996) ................................................................................. 17

*Wallace v. Kato*,
549 U.S. 384 (2007) ................................................................................................... 6

*Walters v. Edgar*,
163 F.3d 430 (7th Cir. 1998) ..................................................................................... 8

*Williams v. Seniff*,
342 F.3d 774 (7th Cir. 2003) ................................................................................... 18

*Willoughby v. Vill. of Fox Lake*,
2018 WL 6324917 (N.D. Ill. Dec. 4, 2018) ............................................................ 21

*Wilson v. Cook Cnty.*,
742 F.3d 775 (7th Cir. 2014) ................................................................................... 10

*Wilson v. Warren Cnty.*,
830 F.3d 464 (7th Cir. 2016) ................................................................................... 17

*Yang v. Hardin*,
37 F.3d 282 (7th Cir. 1994) ..................................................................................... 16

## STATUTES

42 U.S.C. § 1983 ............................................................................................... passim

735 ILCS 5/13-202 ................................................................................................ 7, 22

735 ILCS 5/13-211 ................................................................................................ 8, 22

745 ILCS 10/8-101 ..................................................................................................... 21

**Page(s)**

775 ILCS 35/15.................................................................................................................. 24, 25

775 ILCS 35/20...................................................................................................................... 24

**CONSTITUTIONAL PROVISIONS**

Ill. CONST. art. I, § 3 ............................................................................................................... 28

U.S. CONST. Amend. I ............................................................................................................. 10

Defendants Board of Education of the City of Chicago ("Board"), The David Lynch Foundation ("DLF"), and the University of Chicago ("University") submit this memorandum in support of their combined motions to dismiss the related complaints of Plaintiffs Kaya Hudgins, Mariyah Green, and Shavon Gibson (collectively "Plaintiffs").

## I.  INTRODUCTION

More than two years after Amontae and Darryl Williams brought religious civil rights claims on behalf of proposed classes of students and parents, three new Plaintiffs, represented by the same counsel, have entered the fray.  Kaya Hudgins, Mariyah Green, and Shavon Gibson all allege that their encounters with Quiet Time at Bogan High School during the 2018-2019 school year violated their religious beliefs.  But Plaintiffs' claims are both stale and meritless.

Each of the three new Plaintiffs assert three claims (one under Section 1983 and two under Illinois state law) against each of the three Defendants.  Of these 27 newly-asserted claims, 22 are time-barred.  Shavon Gibson's federal claims are untimely, as is Mariyah Green's federal claim against the University.  And all of Plaintiffs' 18 state-law claims exceed the one-year statute of limitations.

Nor are Plaintiffs' claims viable on the merits.  Addressing Plaintiffs' same legal theories, this Court has previously dismissed a claim for failure to overcome *Monell* (*Williams* Dkt. 81 at 12-13), and refused to permit all claims under Illinois common law (*Williams* Dkt. 160, 179, 181). The new Complaints nevertheless repeat these same deficiencies.  Further, because the new Complaints rely on the same facts pending before the Court in the *Williams* summary judgment papers, they are legally deficient for the same reasons addressed in Defendants' motions.  *See Williams* Dkt. 214, 226; Ex. 1 (Dkt. 181, 4/20/2022 Tr. at 9-12). As set forth both in *Williams* summary judgment briefing and here, activities by DLF and the University do not rise to the level of state action.  And Illinois does not authorize damages on Plaintiffs' state law claims.

As such, all of Plaintiffs' 27 claims should be dismissed with prejudice.

## II.     FACTUAL BACKGROUND

### A.     Related Quiet Time Litigation

The Court is familiar with Quiet Time due to the related *Williams* case. *See*, *e.g.*, *Williams* Dkt. 65, 81, 203, 212, 220 (denying motion to amend to add Plaintiffs).[1] Plaintiffs Hudgins and Green are former Chicago Public Schools students who participated in Quiet Time at Bogan Computer Technical High School ("Bogan"). *See Hudgins* Compl. ¶ 91; *Green* Compl. ¶ 78. Plaintiff Gibson is Green's mother. *Green* Compl. ¶ 11.

Plaintiffs' claims are based on Defendants' alleged collaboration in implementing Quiet Time, which allegedly violated Plaintiffs' federal and state religious civil rights. Plaintiffs seek nominal, compensatory, and punitive damages against Defendants, as well as costs and attorney's fees. *Hudgins* Compl. ¶¶ 166-172; *Green* Compl. ¶¶ 152-157. They do not seek declaratory or injunctive relief. *See id.*

The Complaints' allegations in *Hudgins* and *Green* substantially overlap, and derive from the factual record in *Williams*. Accordingly, Defendants summarize the Complaints in tandem.

### B.     Quiet Time In Chicago Public Schools

Plaintiffs' claims relate to the "Quiet Time" program, as implemented at Bogan during the 2018-2019 school year. *See Hudgins* Compl. ¶¶ 10, 91; *Green* Compl. ¶¶ 78-80. Bogan is a public Chicago high school, operated by the Board. *See Hudgins* Compl. ¶ 10, 12, 15, 91; *Green* Compl. ¶¶ 10, 12, 15, 78. Quiet Time was a program consisting of two 15-minute periods of quiet activity

---

[1] The Court has identified three matters concerning Quiet Time as related. The original case is captioned *Williams v. Board et al.*, Case No. 1:20-cv-04540 (N.D. Ill.). The Court has, in turn, found the above-captioned *Hudgins* and *Green* matters to be related to *Williams*. *See Hudgins* Dkt. 4; *Green* Dkt. 4. Citations to the respective dockets will begin with lead plaintiff's names. The *Hudgins* Amended Complaint is operative. *See Hudgins* Dkt. 2.

each school day. *Hudgins* Compl. ¶ 66; *Green* Compl. ¶ 64. Quiet Time offered instruction in transcendental meditation for some students. *Hudgins* Compl. ¶¶ 29, 75, Ex. M; *Green* Compl. ¶¶ 27, 73.

Eight Chicago Public Schools participated in Quiet Time between 2015 and 2019, after the Chicago Design Competition selected the David Lynch Foundation as one winner of a grant for programs to improve life outcomes of youth at risk for violence. *See Hudgins* Compl. ¶¶ 2, 22, 115, Ex. V; *Green* Compl. ¶¶ 2, 20, 105, Ex. 21. Bogan offered Quiet Time from 2017 to 2019. *See Hudgins* Compl. ¶ 91; *Green* Comp. ¶ 78. Quiet Time ended at Bogan and across CPS on June 18, 2019, the last day of the 2018-2019 school year. *See Williams* Dkt. 65 at 32; *Hudgins* Compl. ¶ 110, Ex. P; *Green* Compl. ¶ 100, Ex. 14.

**C.     The David Lynch Foundation**

The David Lynch Foundation is a private, not-for-profit non-governmental institution. *See Hudgins* Compl. ¶¶ 13, 15; *Green* Compl. ¶¶ 13, 15. Developed by DLF, Quiet Time is designed to "reduce stress and dramatically improve academic performance, student wellness and the school environment." *Hudgins* Compl. Ex. B; *Green* Compl. Ex. 2. The Complaints allege Quiet Time "is based in Hindu beliefs and the practice of 'Transcendental Meditation' is fundamentally religious in nature." *Hudgins* Compl. ¶ 3; *Green* Compl. ¶ 3. Plaintiffs allege the initial training session for learning transcendental meditation is religious. *See generally Hudgins* Compl. ¶¶ 32-48; *Green* Compl. ¶¶ 30-46.

**D.     The University Of Chicago**

The University of Chicago Urban Labs is a group of academic research laboratories working to address challenges facing communities in Chicago and other cities, including challenges related to crime and education. *See Hudgins* Compl. ¶ 14; *Green* Compl. ¶ 14. The University, including its Urban Labs, is a private, non-governmental institution. *See Hudgins*

3

Compl. ¶¶ 14-15; *Green* Compl. ¶¶ 14-15. The University engaged in academic research regarding Quiet Time to assess "how programs and interventions impact a student's academic performance and other school outcomes." *See Hudgins* Compl. ¶¶ 14, 21-25, 126, 152; *Green* Compl. ¶¶ 20-23, 115, 138. Plaintiffs, however, do not allege any University personnel ever instructed students in transcendental meditation or interacted with them personally. *See generally Hudgins* Compl. ¶¶ 14, 17, 23-31, 34, 37, 51-52, 68-69, 71-72, 76-77, 93-94, 96-97, 102-104, Ex. J ¶¶ 2, 7, 9-12, 17, Ex. G (K. Hudgins Dep. Tr. 21:2-8); *Green* Compl. ¶¶ 14, 20-23, 32, 35, 46, 50, 59-61, 63, 66-67, 69, Ex. 9 ¶¶ 7-10, 17, 23.

**E.      Plaintiffs' Participation In Quiet Time**

**1.      Kaya Hudgins**

Plaintiff Hudgins attended Bogan during the 2018-2019 school year as a sophomore. *Hudgins* Compl. ¶ 91, Ex. K ¶ 1 (Hudgins Am. Decl.), Ex. G at 28:16-30:2. Hudgins was introduced to Quiet Time in the fall of 2018. *Hudgins* Compl. Ex. K ¶¶ 1, 7 (Hudgins Am. Decl.). After attending an initial training, Hudgins did not consistently meditate during the daily Quiet Time periods. *Hudgins* Compl. Ex. G at 190:13-19, 261:18-21. Hudgins transferred out of Bogan about "three-fourths of the way" through her junior year to a high school that did not offer Quiet Time. *See Hudgins* Compl. Ex. G at 53:6-22; 55:16-21. Hudgins turned 18 on April 22, 2021. *Hudgins* Compl. ¶ 11.

Hudgins enjoyed her experience with transcendental meditation when she went through the training. *See Hudgins* Compl. Ex. G at 280:8-11. While she was being trained in transcendental meditation, Hudgins felt that transcendental meditation was having some "positive impacts" on her. *Id.* Hudgins's only "side effect" from transcendental meditation was feeling sleepy. *Id.* at 184:1-185:4, 279:19-280:7. Transcendental meditation never caused her to hear voices, have

nausea, headaches, dizziness, feel sad, depressed, anxious, her heart to race, or to see a doctor or counselor. *Id.* at 185:5-187:15.

Hudgins alleges the initial transcendental meditation training contradicted her religious beliefs because it "caused [her] to question her Islamic beliefs." *Hudgins* Compl. ¶ 98. Hudgins, however, does not contend daily meditation itself, separate from the initial training, violated her religious beliefs. *Hudgins* Compl. Ex. G at 55:22-56:1, 56:16-24.

### 2. Mariyah Green

Plaintiff Green attended Bogan as a junior and a senior "beginning in September 2018 and graduating in the spring of 2020." *Green* Compl. ¶ 78, Ex. 9 ¶ 3. Green alleges her first day of Quiet Time instruction was on or around September 25, 2018 when she "learn[ed] to meditate." *Green* Compl. Ex. 9 ¶ 5. Green was 16 years old at the time; according to public records, she turned 18 on January 28, 2020. *See Green* Compl. ¶ 80; Defendants' Request for Judicial Notice of Birthdates ("RJN"), Ex. A.

Green alleges transcendental meditation contradicted her religious beliefs, because "it was against [her] religion to kneel before anyone except for Jesus Christ." *Green* Compl. ¶ 84, Ex. 9 ¶¶ 8-9, 11. Green refused to participate at her transcendental meditation instruction and went late to class to avoid further transcendental meditation instruction. *Id.* ¶¶ 11, 13. Green refused to meditate after the September 25, 2018 training. *Id.* ¶ 21. During the daily 15-minute Quiet Time periods thereafter Green "would just keep [her] eyes closed and fall asleep." *Id*.

### 3. Shavon Gibson

Plaintiff Shavon Gibson is Green's mother. *Green* Compl. ¶ 87. According to public records, Gibson was born in 1980. RJN, Ex. B. Plaintiff Gibson alleges Quiet Time intruded on her child's religious upbringing as a Christian and pushed her child "toward a belief system that is inconsistent with her personal faith and the religious practices of her family[.]" *Green* Compl.

¶ 91. Plaintiff Gibson's sister and Plaintiff Green's aunt Tracey Lee, a Christian pastor, complained to the school about transcendental meditation on September 26, 2018. *Id.*, Ex. 10 ¶ 7.

### III. ARGUMENT

On a motion to dismiss, the Court accepts as true all well-pled factual allegations, but the Court is not constrained by the legal characterizations Plaintiffs place upon those allegations. *See, e.g.*, *O'Gorman v. City of Chi.*, 777 F.3d 885, 888 (7th Cir. 2015).[2] Plaintiffs must state a claim for relief that is "plausible on its face." *O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 621-22 (7th Cir. 2020). Plaintiffs must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, "a plaintiff can plead himself out of court by alleging facts which show that he has no claim[.]" *Jackson v. Marion Cty.*, 66 F.3d 151, 153 (7th Cir. 1995). "A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he is not entitled to judgment." *In the Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992).

### A. Plaintiffs' Federal-Law Claims Are Partially Time-Barred

#### 1. Shavon Gibson's Section 1983 Claims Are Time-Barred

"[T]he statute of limitations may be raised in a motion to dismiss if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). Plaintiff Shavon Gibson asserts a Section 1983 First Amendment claim to "direct the religious education of her CPS-student child." *Green* Compl. ¶¶ 5, 72, 92. The statute of limitations for Section 1983 claims brought in Illinois is two years. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing 735 ILCS 5/13-202); *see also Williams* Dkt. 65 at 28-29. As set forth below, Gibson's claim accrued no later than September 26, 2018. *Green*

---

[2] Unless otherwise indicated, internal citations and quotations are omitted, and emphasis is added.

Compl. ¶ 91, Ex. 10 ¶¶ 3, 4, 7.  But Gibson did not file suit until February 2, 2023.  *See Green* Dkt. 1.  Gibson's Section 1983 claims are, therefore, time-barred.

A Section 1983 claim "accrues" when a plaintiff "knows or should know that his or her constitutional rights have been violated." *Janus v. Am. Fed'n of State, Cty. & Mun. Emps.*, 942 F.3d 352, 361 (7th Cir. 2019).  "A plaintiff does not need to know that his injury is actionable to trigger the statute of limitations—the focus is on the discovery of the harm itself, not the discovery of the elements that make up a claim." *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009).  To determine the accrual date, courts must "identify the injury" and then "determine when the plaintiff could have sued for that injury." *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011).

Gibson alleges she "first learned of the existence of the 'Quiet Time' program" including "its connection to practices and beliefs based in Hinduism" no later than September 26, 2018. *Green* Compl. ¶ 91, Ex. 10 ¶¶ 3, 4, 7.  By September 26, 2018, Gibson knew "this transcendental meditation religious ritual" violated "the religious beliefs of our family." *Id.* ¶¶ 5, 7, 9-12.  Gibson, therefore, had until September 26, 2020 (two years after her claim accrued) to file a Section 1983 parental-rights claim.  But Gibson did not file her parental-rights claim until February 2, 2023, approximately two years and four months too late.  *See Green* Dkt. 1.  Thus, Gibson's Section 1983 claim is time-barred.

Further, Gibson cannot assert any tolling doctrines.  Ordinarily the "filing of a suit with a class allegation tolls the running of the statute of limitations with respect to absent class members." *Glidden v. Chromalloy Am. Corp.*, 808 F.2d 621, 627 (7th Cir. 1986) (citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974)).  Darryl Williams (the father of Amontae Williams) filed a Section 1983 First Amendment claim on behalf of a proposed class of parents on

7

September 25, 2020. *Williams* Dkt. 35 (Count 1). But because the Court ultimately dismissed Darryl's Section 1983 claim for lack of standing, tolling does not apply to that proposed class of parents. *Williams* Dkt. 203 at 12. In fact, the Seventh Circuit has held "the filing of a purported class-action complaint by a plaintiff who lacks standing does not toll the statute of limitations for those who later seek to intervene as plaintiffs." *See Palmer v. Stassinos*, 236 F.R.D. 460, 465 (N.D. Cal. 2006) (citing *Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998)); *see also In re Dairy Farmers of Am., Inc. Cheese Anti. Litig.*, 2015 WL 3988488 (N.D. Ill. June 29, 2015). Because no parental class tolling ever took effect, Gibson's Section 1983 claim is time-barred against all Defendants.

**2.      Mariyah Green's Section 1983 Claim Is Time-Barred Against The University**

Plaintiff Mariyah Green asserts a Section 1983 First Amendment claim based on attending transcendental meditation training "at the beginning of her junior year at Bogan," because "it was against Green's religion to kneel before anyone except for Jesus Christ." *Green* Compl. ¶¶ 80, 84-85; Ex. 9 ¶¶ 2, 9-15. Like her mother, Green's claim also accrued no later than September 26, 2018. *See* disc. *supra* at 7-8; *Green* Compl. ¶ 84, Ex. 9 ¶¶ 12-13, 21.

Green was 16 years old in September 2018 when she attended a transcendental meditation training session at Bogan. *See Green* Compl. ¶¶ 78, 80. Green, therefore, benefits from Illinois' two-year tolling provision for "Minors and persons under legal disability." *See* 735 ILCS 5/13-211(a) (the "Minor Tolling Statute"). This tolling applies to Section 1983 claims. *Davila v. City of Chi.*, 2018 WL 5024910, at *2 (N.D. Ill. Oct. 17, 2018) (recognizing that if a Section 1983 "cause of action accrues while the plaintiff is a minor, the statute of limitations is tolled until her twentieth birthday"). According to public records, Green turned 18 on January 28, 2020. *See* RJN, Ex. A. Because of the Minor Tolling Statute, Green's deadline to file her Section 1983 claim was January 28, 2022.

8

Although Green was a member of the proposed student class in *Williams*, and thus benefits from *American Pipe* tolling, her Section 1983 claim is, nonetheless, untimely as to the University. Amontae Williams filed the putative student class complaint on September 25, 2020. *See Williams* Dkt. 35. Student class tolling ended against the University when the Court dismissed Amontae's Section 1983 claim against the University on May 21, 2021. *Williams* Dkt. 65 at 45, *amendment denied*, Dkt. 81 at 12-13. The time difference between the May 21, 2021 order dismissing the University and Amontae's original filing of his putative student class complaint was 238 days. Green's time to file a Section 1983 claim against the University was, therefore, tolled by 238 days. *See*, *e.g.*, *U.S. v. Ibarra*, 502 U.S. 1, 4 n.2 (1991) ("[W]hen a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped."). Adding those 238 days to Green's twentieth birthday (January 28, 2022) means Green's Section 1983 deadline against the University was tolled until September 23, 2022. Green did not file this action until five months later, on February 2, 2023. *Green* Dkt. 1. Accordingly, Green's Section 1983 claim is time-barred against the University.

**B.     The Complaints Fail To State A Section 1983 Claim**

To state a claim under Section 1983, Plaintiffs must allege facts which show (1) each defendant intentionally and unlawfully deprived each plaintiff of a constitutional right and (2) the deprivations occurred under the color of state law. *Anderson v. Simon*, 217 F.3d 472, 475 (7th Cir. 2000). Plaintiffs claim each Defendant's involvement in Quiet Time violated their rights under the religion clauses of the First Amendment. *Hudgins* Compl. (Count I), *Green* Compl. (Count I). Those clauses provide "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." U.S. CONST. Amend. I. Here, Plaintiffs' Section 1983 claims are deficient because (1) Plaintiffs fail to plead the necessary elements of *Monell*; and

9

(2) Defendants DLF and the University did not engage in state action.  Finally, to the extent any of the three Plaintiffs' Section 1983 claims survive, the Complaint does not allege any basis for more than nominal damages.

### 1.       The Complaints Fail To Plead Section 1983 Liability Under *Monell*

Plaintiffs' Section 1983 claims fail (Count I), because they fail to allege the required elements of a *Monell* claim against any Defendant.

In order to support a *Monell* claim, a plaintiff must plead an entity violated Section 1983 either: "'(1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a 'wide-spread practice' that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with 'final decision policymaking authority.'"  *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005); *see generally Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  Plaintiffs here have nowhere identified any express policy of any Defendant that caused their alleged religious constitutional harms.  *See generally Hudgins* Compl.; *Green* Compl.  Instead, Plaintiffs appear to assert that Defendants' various acts related to Quiet Time caused a constitutional deprivation under the widespread practice theory.  *Hudgins* Compl. ¶¶ 131-137; *Green* Compl. ¶¶ 124-30.

"[T]o maintain a § 1983 claim against a municipality, one must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)."  *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002).  Simple but-for causation is not enough.  *See Wilson v. Cook Cnty.*, 742 F.3d 775, 784 (7th Cir. 2014).  The Seventh Circuit has said a "moving force" must be the "catalyst" for the injury in question, not merely a "contributing factor."  *Johnson v. Cook Cnty.*, 526 F. App'x 692, 695-96 (7th Cir. 2013).  Plaintiffs must also satisfy this

10

causation element when seeking to impose Section 1983 liability against a private corporation. *See Iskander v. Vill. Of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982); *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 530 (7th Cir. 2000). Here, Plaintiffs have not sufficiently pleaded that any Defendants' conduct was a deliberate "moving force" behind their alleged religious injuries.

### a. Board

Plaintiffs fail to plead any Board practice was the moving force that caused them to encounter allegedly Hindu religious practices at Bogan. *See Hudgins* Compl. ¶¶ 38, 47, 138; *Green* Compl. ¶¶ 36, 45, 125. At most, Plaintiffs allege various Board practices may have been "contributing factors" to those allegedly unwanted religious encounters. For example, Plaintiffs allege school officials told all students they must participate in Quiet Time; warned students that failure to participate in Quiet Time could impact their grades and disqualify them from participating in their graduation ceremonies, and presented outside certified transcendental meditation instructors as authority figures. *Hudgins* Compl. ¶¶ 143-148; *Green* Compl. ¶¶ 130-135. Even if true, requiring Plaintiffs to participate in Quiet Time is not synonymous with practicing transcendental meditation or being trained in transcendental meditation. *Hudgins* Compl. ¶¶ 142-43; *Green* Compl. ¶¶ 129-30. Plus, Plaintiffs acknowledge not all students had to meditate, distinguishing between students who were an "active mantra meditating participant" and those who sat quietly. *Hudgins* Compl. ¶¶ 142-43; *Green* Compl. ¶¶ 129-30. Therefore, by Plaintiffs' own admission, the alleged practices at Bogan could not have been the "moving force" behind the alleged constitutional violations and their claims cannot survive dismissal. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) (the challenged practice "must be closely related to the ultimate injury" plaintiff suffered); *Estate of Sims ex rel. Sims v. Cnty. of Barbeau*, 506 F.3d 509, 515 (7th Cir. 2009) (there must be a "direct causal link" between a custom and the alleged

11

constitutional violations); *Johnson*, 526 F. App'x at 696 (a "moving force" is the "catalyst" for the injury in question, not merely a "contributing factor").

### b. DLF

Plaintiffs do not allege any facts to support that DLF deliberately maintained an unconstitutional policy to promote the Hindu religion in public schools. Instead, the best they can muster is to point to what they claim to be DLF's "mission" as stated on its website. *Hudgins* Compl. ¶ 13; *Green* Compl. ¶ 13. However, examination of Plaintiffs' attached webpage exhibits demonstrate that DLF's mission has nothing to do with the promotion of religion, but rather, is designed "to prevent and eradicate the all-pervasive epidemic of trauma and toxic stress among at-risk populations through promoting widespread implementation of the evidence-based Transcendental Meditation (TM) program in order to improve their health, cognitive capabilities, and performance in life." *Hudgins* Compl. Ex. A at 1; *Green* Compl. Ex. 1 at 1. DLF also states on its webpage that it focuses its efforts to help reduce toxic stress on not just "underserved inner city students," but also, "veterans with PTS and their families . . . and children who are survivors of violence and abuse." *Id.* DLF's website further states Quiet Time is "non-religious," and is designed to "reduce stress and dramatically improve academic performance, student wellness, and the school environment" for "millions of children who grow up in an oppressive climate of poverty, violence, and fear." *Hudgins* Compl. Exs. A, B; *Green* Compl. Exs. 1, 2. To the extent Plaintiffs source their alleged harms to their initial training experiences in transcendental meditation (*Hudgins* Compl. ¶ 94; *Green* Compl. ¶ 84), Plaintiffs affirmatively plead those sessions were conducted by a different entity altogether – namely, certified transcendental meditation instructors that DLF contracted with from the Maharishi Foundation USA. *See Hudgins* Compl. ¶ 34; *Green* Compl. ¶ 32.

12

Plaintiffs' pleadings are devoid of any allegations of an unconstitutional policy or widespread practice by DLF. Instead they merely allege in conclusory fashion that DLF "coordinated," "worked collaboratively with" and "partnered" with the Board and the University to implement Quiet Time within CPS schools. *Hudgins* Compl. ¶¶ 6, 21, 27, 105-111; *Green* Compl. ¶¶ 6, 19, 25, 97-101. DLF's alleged "involvement," "coordination," or even an alleged "partnership" with CPS and/or the University is not the equivalent of DLF having a policy that was the moving force behind any alleged constitutional violation. *See, e.g., A.J. v. Butler Ill. Sch. Dist. 53*, 2018 WL 1469005, at *4 (N.D. Ill. Mar. 26, 2018). In *A.J.*, this Court specifically held that a private law firm's close working relationship with a school district did not circumvent the need for the plaintiff to show a policy or practice of the law firm that caused plaintiff's injury. *Id.* Likewise, DLF's close working relationship with the Board to administer Quiet Time does not amount to a widespread unconstitutional practice.

### c.  University

The Court previously dismissed Amontae Williams' Section 1983 claim against the University for failure to satisfy *Monell* (*Williams* Order Denying Leave to Amend, Dkt. 81 at 12-13) and the new Complaints do not resolve those deficiencies. Plaintiffs have not alleged that the University was involved in developing or leading any allegedly religious aspects of Quiet Time, nor that those aspects were the result of any official University policy or custom. *See Tanner v. City of Chi.*, 2021 WL 197422, at *5 (N.D. Ill. 2021) (dismissing complaint, because "even assuming that Plaintiff sufficiently alleged a constitutional violation, he must also allege facts sufficient to demonstrate that the violation was caused by a [Defendant's] custom or policy"). Plaintiffs point to a 2015 Master Services Agreement between the Board and the University that says the University was to "rigorously evaluate" research programs involving CPS students. *Hudgins* Compl. ¶¶ 14, 23, 102-103, 124-126, 133-134, Ex. L; *Green* Compl. ¶¶ 14, 21, 95-96,

13

105-106, 113-114, 117-121, Ex. 4. But that contract is a broad agreement for research services which neither mentions Quiet Time nor religion. *See id.* The more specific Quiet Time documents, namely the University's Research Review Board approvals, are likewise silent as to religion. *See Hudgins* Compl. ¶¶ 2, 22, 115, Ex. V; *Green* Compl. ¶¶ 2, 20, 105, Ex. 21.

Perhaps in recognition of this policy silence, Plaintiffs allege only that University employees "knew or should have known" about the supposedly religious aspects of the program in the course of helping "vet" and propose Quiet Time. *Hudgins* Compl. ¶ 19, 23-24, 134; *Green* Compl. ¶ 21-22, 121. Plaintiffs fault the University for neither identifying nor disclosing Quiet Time's allegedly religious aspects. *See Hudgins* Compl. ¶¶ 72-73, 130, 132; *Green* Compl. ¶ 70-71. That is not sufficient, however, to impose liability under *Monell*. *See Williams*, Order Denying Leave to Amend, Dkt. 81 at 12-13. Although Plaintiffs make much of the University's purported inaction despite potential knowledge of religious elements, the "failure to disclaim one single religious exercise surely does not support the existence of a custom or policy." *See Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 615 (8th Cir. 2003) (affirming dismissal of Establishment Clause claim based on *Monell*).

Finally, Plaintiffs cannot satisfy *Monell* against the University, because they cannot show, through *deliberate* conduct, that any University policy was the "moving force" behind any alleged injury to any individual Plaintiff. *See J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020). Plaintiffs do not allege that any University personnel instructed students in transcendental meditation; those training sessions were led by certified instructors affiliated with the Maharishi Foundation USA. *See Hudgins* Compl. ¶¶ 17, 34, 37, 52; *Green* Compl. ¶¶ 32, 35, 50, 66-67. Nor do Plaintiffs allege that any University personnel ever led any daily meditation sessions in classrooms; those sessions were conducted by either certified instructors or CPS teachers. *See*

14

*Hudgins* Compl. ¶¶ 68-69, 71; *Green* Compl. ¶¶ 66-67, 69. Plaintiffs never plead that any University employee even interacted with them, much less that those employees inflicted religious harms directed by a University policy of violating religious civil rights. *See generally Hudgins* Compl. ¶¶ 14, 17, 23-31, 34, 37, 51-52, 68-69, 71-72, 76-77, 93-94, 96-97, 102-104, Ex. J ¶¶ 2, 7, 9-12, 17, Ex. G at 21:2-8; *Green* Compl. ¶¶ 32, 35, 50, 46, 59-61, 63, 66-67, 69, Ex. 9 ¶¶ 17, 23.

Because Plaintiffs plead no University policy or practice that was the moving force behind any violations of their religious rights, their Section 1983 claims against the University must be dismissed under *Monell.*

**2. The Complaints Fail To Allege State Action By DLF Or The University**

Plaintiffs' Section 1983 claims also cannot be asserted against DLF or the University as private actors. In general, "[t]he First and Fourteenth Amendments to the Constitution protect citizens from conduct by the government, but not from conduct by private actors, no matter how egregious that conduct might be." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009) (dismissing Section 1983 claims against police union for failure to allege state action); *accord Murphy v. Mount Carmel High Sch.*, 543 F.2d 1189, 1193 (7th Cir. 1976) ("The guaranties of the First Amendment run only against the federal government, not private interference."). The Complaints acknowledge DLF and the University are private not-for-profit corporations. *Hudgins* Compl. ¶¶ 13-14; *Green* Compl. ¶¶ 13-14.

The Seventh Circuit has recognized two limited exceptions under which private entities like DLF and the University may be found to have acted under color of state law. *See Case v. Milewski*, 327 F.3d 564, 567-68 (7th Cir. 2003) (affirming dismissal for lack of state action). The first is where the state has cloaked the private entity with some degree of state authority, usually through delegation of a public function as part of an employment, contractual or other agency relationship. *See*, *e.g.*, *Marijan v. Univ. of Chi.*, 2018 WL 3463272, at *4 (N.D. Ill. July 18, 2018)

15

(citing *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994)). The second "is when the defendants have conspired or acted in concert with state officials to deprive a person of his civil rights." *Case*, 327 F.3d at 567. The Complaints, however, fail to plausibly allege either exception applies.

In *Williams*, this Court originally dismissed plaintiffs' claims against DLF and the University for failure to allege state action. *Williams* Dkt. 65 at 34-39, 45 (citing *L.P. v. Marian Cath. High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017)). The Court later permitted an amended complaint's allegations of state action to proceed. *Williams* Dkt. 81 at 10-12. After discovery in *Williams*, however, the University and DLF moved for summary judgment based on plaintiffs' lack of evidence to support state action. *See Williams* Dkt. 214, 215 at 14-16, 217 at 7-10. Summary judgment motions in *Williams* have been fully briefed. Plaintiffs' Complaints here rely on the same facts regarding DLF's and the University's alleged state action as their counsel's opposition brief in *Williams*. *Compare Hudgins* Compl. ¶¶ 100-120 *and Green* Compl. ¶¶ 93-108, *with Williams* Dkt. 228 ¶¶ 3-9, 19-23, 60-61. Thus, if the Court's pending summary judgment ruling in *Williams* recognizes that those facts are insufficient to constitute in state action, that legal analysis would likewise dictate dismissal of the *Hudgins* and *Green* claims against the University and DLF.

Regardless of whether the Court analyzes state action in its forthcoming *Williams* summary judgment opinion, Plaintiffs' Complaints still fail to allege state action. With respect to the "public function" test, Plaintiffs include some conclusory language about the Board delegating state authority to DLF and the University. *See Hudgins* Compl. ¶ 103; *Green* Compl. ¶ 96. But Plaintiffs' specific factual allegations do not support a delegation conclusion. The Complaint alleges the Board entered into services agreements with DLF and the University delineating their respective roles regarding Quiet Time. *See Hudgins* Compl. ¶¶ 14, 100-105, 113-114, Exs. E, L,

16

M, S; *Green* Compl. ¶¶ 14, 95-96, 103-104, Exs. 4, 11, 17, 20. Contracts or agreements are "insufficient to constitute state action." *See Evans v. Torres*, 1996 WL 5319, at *7 (N.D. Ill. Jan. 4, 1996). Moreover, those attached contracts specify that the Board (the only government Defendant) had "final authority" to authorize Quiet Time. *See Hudgins* Compl. Ex. L ¶ 3(B)(v); *Green* Compl. Ex. 4 ¶ 3(B)(v). Private defendants do not engage in state action when they work with, make recommendations to, or even provide guidelines to government officials, so long as the government official retains the ultimate authority to accept or reject the private proposals. *See Vickery v. Jones*, 100 F.3d 1334, 1345 (7th Cir. 1996) (collecting cases).

Additionally, for the public function test to apply, the function performed by the private actor must have been "traditionally the *exclusive* prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982). Education is not exclusively a public function. *Black by Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 710 (3d Cir. 1993) (finding company under contract to bus public school children to not be a state actor).

Nor do Plaintiffs adequately allege a joint conspiracy theory of state action. The Complaints only describe a mere public-private partnership to deliver a program. *See Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019). Providing aid or encouragement to a state actor does not amount to a conspiracy. *Id*. at 616. Nor does merely "working together." *Craig v. City of Chi.*, 2011 WL 1196803, at *14 (N.D. Ill. March 25, 2011). More is required: private and state actors must have "had a meeting of the minds and thus reached an understanding" to deny Plaintiffs a constitutional right. *Wilson v. Warren Cnty.*, 830 F.3d 464, 468 (7th Cir. 2016) (public and private actors must share a "common, unconstitutional goal"); *accord Linda Constr. Inc. v. Allied Waste Indus.*, 2017 WL 1196889, at *8 (N.D. Ill. March 31, 2017) (no conspiracy where conspiracy allegations "can be summed up in four words: they knew each other"). Plaintiff's

17

allegations about administrative logistics (*Hudgins* Compl. ¶¶ 112, 118; *Green* Compl. ¶¶ 102, 108) and conducting research (*Hudgins* Compl. ¶¶ 117, 120; *Green* Compl. ¶¶ 107) do not evince a "meeting of the minds" to accomplish a "common, unconstitutional goal." *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991); *see also Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003).

Plaintiffs also fail to plead willfulness. There are no plausible allegations that Defendants subjectively knew or believed Quiet Time was religious, much less intentionally implemented it in order to harm students' religious civil rights. Bereft of those facts, Plaintiffs instead advance a conspiracy theory based on negligence. *See*, *e.g.*, *Hudgins* Compl. ¶¶ 4, 21, 23, 24, 26, 131 (alleging Defendants "knew or should have known" about purportedly religious elements); *Green* Compl. ¶¶ 4, 19, 21, 22, 24 (same). But "[a]ccidental, inadvertent, or negligent participation in a common scheme does not amount to conspiracy." *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill.2d 102, 133–34 (1999); *T.S. v. Twentieth Century Fox Television*, 2017 WL 4620841, at *4-6 (N.D. Ill. Oct. 16, 2017) (dismissing conspiracy claims). Plaintiffs simply do not plead an *intentional* conspiracy between public and private Defendants to harm religious civil rights.

DLF and the University should be dismissed due to Plaintiffs' failure to allege state action.

### 3. Plaintiffs' Legal Remedies Under Section 1983 Are Limited To Nominal Damages

Although a district court may award compensatory damages to a successful Section 1983 plaintiff, it may not award damages to account for "the abstract value of a constitutional right." *Horina v. City of Granite City, Ill.*, 538 F.3d 624, 637-38 (7th Cir. 2008). Accordingly, a district court may award Plaintiffs damages only if they plead that the denial of their constitutional rights resulted in an actual, non-emotional, injury. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986).

### a. Hudgins Fails To Allege Compensatory Damages

In her Complaint, Hudgins summarily asserts that Defendants caused her to experience "anger, anxiety, and emotional damage." *Hudgins* Compl. ¶ 154. The Seventh Circuit, however, requires a plaintiff "to show 'demonstrable emotional distress' not just point to circumstances of the constitutional violation which might support an inference of emotional injury." *Stevens v. Hous. Auth. of South Bend, Ind.*, 663 F.3d 300, 308 (7th Cir. 2011); *Denius v. Dunlap*, 330 F.3d 919, 929-30 (7th Cir. 2003) ("bare allegations by a plaintiff that the defendant's conduct made him 'depressed,' 'humiliated,' or the like are not sufficient to establish injury [for pain and suffering in an Section 1983 action] unless the facts underlying the case are so inherently degrading . . . to infer that a person would suffer emotional distress . . ."); *Crabtree v. Experian Info. Sols., Inc.*, 2018 WL 1872112, at *3 (N.D. Ill. Apr. 17, 2018), *aff'd*, 948 F.3d 872 (7th Cir. 2020) (dismissing conclusory allegations of emotional distress "because they are so easy to manufacture").

Further, Hudgins attaches as an exhibit her prior deposition testimony which states that the main side effect she experienced from transcendental meditation was that she felt sleepy. *Hudgins* Compl. Ex. G at 184:1-22. She expressly disclaimed any other side effects from transcendental meditation such as hearing voices, nausea, headaches, dizziness, feeling sad, depression, anxiousness, her heart racing, or that transcendental meditation caused her to see a doctor or counselor. *Id.* at 185-86. Sleepiness fails to rise to actionable emotional distress as a matter of law. *Biggs v. Village of Dupo*, 892 F.2d 1298, 1305 (7th Cir. 1990) (plaintiff's testimony that she was "depressed, a little despondent, or even completely humiliated were insufficient); *Scott v. Peterson*, 2010 WL 3173001, at *5 (N.D. Ill. Aug. 11, 2010) (plaintiff's vague statements about his humiliation, loss of relationships, and sleeplessness, without more, were not sufficient to prevent court from granting summary judgment on the issue of compensatory damages).

19

### b. Green Fails To Allege Compensatory Damages

As for Green, in addition to her allegations of emotional distress being wholly conclusory, she admits in her declaration that when she requested to opt out of elements of the transcendental meditation instruction that she found objectionable, like kneeling in front of an image of a man, she was permitted to do so. *Green* Compl. ¶¶ 140, 152, Ex. 9 ¶¶ 7, 10, 13. Moreover Green admits she did not meditate during any of the daily Quiet Time sessions at Bogan and just kept her eyes closed and fell asleep. *See id. Ex.* 9 at ¶ 21. Thus, because Green alleges no actual injury, Green's assertion of compensatory damages fails. *See Sizelove v. Madison-Grant United Sch. Corp.*, 597 F. Supp. 3d 1246, 1283 (S.D. Ind. 2022) (finding plaintiff in Section 1983 action alleging distress, anger, stress and headaches was not entitled to emotional damages where no actual injury was proven).

At most, Green asserts that she was "upset." Ex. 9 at ¶ 29. "Upset" feelings less severe than humiliation, however, is insufficient to assert damages based on emotional distress. *See Scott*, 2010 WL 3173001, at *5 ("Unsupported statements alleging humiliation and depression are insufficient to establish damages for emotional distress or pain and suffering.") (citing *Nekolny v. Painter*, 653 F.2d 1164, 1172-73 (7th Cir. 1981) (finding insufficient evidence to support emotional distress damages when plaintiff only asserted that he was depressed, despondent and humiliated)). Accordingly, Green's claim should be dismissed.

### C. Plaintiffs' State-Law Claims Are Time-Barred

#### 1. Plaintiffs' IRFRA And Illinois Common Law Claims Are Subject To A 1-Year Statute Of Limitations

All Plaintiffs' state-law claims against all Defendants are time-barred and should be dismissed. Plaintiffs each assert two state-law claims: an IRFRA claim (*Hudgins* Compl. (Count II); *Green* Compl. (Count II)), and an Illinois Common Law claim (*Hudgins* Compl. (Count III);

20

*Green* Compl. (Count III)). The Illinois Tort Immunity Act ("TIA") imposes a one-year statute of limitations on state-law claims against the Board. *See* 745 ILCS 10/8-101. Because Plaintiffs' claims are grounded in a theory of state action, the same one-year limitations period likewise bars Plaintiffs' claims against DLF and the University. *Cf. Prince v. Campbell*, 314 F. Supp. 2d 793, 795 (N.D. Ill. 2004) (dismissing complaint alleging state action by private actor as time-barred). Plaintiffs' January and February 2023 Complaints, even after considering tolling doctrines, fall outside those one-year limitation periods.

### 2. Plaintiff Shavon Gibson's State-Law Claims Are Time-Barred

Plaintiff Shavon Gibson's one-year state-law claims are time-barred for at least the same reasons as her Section 1983 claim. The one-year statute of limitations for her state-law claims (745 ILCS 10/8-101) affords Gibson even less time to sue than the two-year statute of limitations (735 ILCS 5/13-202) for her federal claim – and her federal claim is time-barred. *See* disc. *supra* at 7-8. As explained above, Gibson's claims accrued no later than September 26, 2018. *Green* Compl. ¶ 80, Ex. 9 ¶¶ 4-12. Thus, Gibson would have needed to file her state law claims by September 26, 2019; however Gibson did not file until February 2, 2023 (*Green* Dkt. 1) – more than three years too late.

Moreover, no tolling doctrines can possibly apply to Gibson's state-law claims. "When state law supplies the limitations period, as it does here, it also supplies the tolling rules." *Willoughby v. Vill. of Fox Lake*, 2018 WL 6324917, at *2 (N.D. Ill. Dec. 4, 2018). Gibson was an adult in 2018 (*see Green* Compl. ¶¶ 11, 87) so the Minor Tolling Statute does not apply. *See* 735 ILCS 5/13-211(a). Further, the Illinois Supreme Court has rejected cross-jurisdictional tolling and held that *American Pipe* tolling does not apply to Illinois state-law claims asserted in federal court. *Portwood v. Ford Motor Co.*, 183 Ill. 2d 459, 467 (1998); *accord Ottaviano v. Home Depot, Inc., USA*, 701 F. Supp. 2d 1005, 1012-13 (N.D. Ill. 2010) ("[T]he filing of the . . . state-law class

21

actions in federal court had no effect on the running of the limitations period for Plaintiffs' state-law claims."). Thus Gibson's state-law IRFRA and common law claims (Counts II and III) are untimely.

### 3. Plaintiffs Mariyah Green's And Kaya Hudgins's State-Law Claims Are Time-Barred

Plaintiff Kaya Hudgins's and Mariyah Green's state-law claims are time-barred, because they were filed more than one year after their respective 18th birthdays. Contrary to Plaintiffs' contention (*see Hudgins* Compl. ¶ 11), former minor claims subject to the Tort Immunity Act benefit from only a one-year, and not a two-year, extension of time to file. *See Ferguson v. McKenzie*, 202 Ill.2d 304, 313 (2001). The Illinois Supreme Court has recognized a conflict between the time periods set forth in the Tort Immunity Act and the Minor Tolling Statute, and has resolved that conflict by adopting a "compromise" where "the Tort Immunity Act has the effect of shortening the two-year period . . . to one year, because the plaintiff is filing suit against a governmental entity." *Goza v. Rainmaker Campground, Inc.*, 2014 WL 5543989, at *2 (C.D. Ill. Nov. 3, 2014) (citing *Ferguson*, 202 Ill.2d 304).

Because Illinois only tolls former-minor state-law claims against local governments by one year, both Plaintiff Green's and Plaintiff Hudgins's state-law claims are untimely.

According to public records, Green turned 18 on January 28, 2020. *See* RJN, Ex. A; *accord Green* Compl. ¶¶ 78, 80 (pleading she was 16 years old in September 2018). Green's birthday required her to file her state-law claims by January 28, 2021. Green did not file her state-law claims until more than two years after the deadline, on February 2, 2023. *Green* Dkt. 1.

Likewise, Hudgins pleads she turned 18 on April 22, 2021. *Hudgins* Compl. ¶ 11; *accord* RJN, Ex. C. Hudgins's filing deadline was thus one year later, on April 22, 2022. But Hudgins

22

did not file her state-law claims until nine months after the deadline, on January 13, 2023. *Hudgins* Dkt. 1.

No further class tolling doctrines can possibly apply to Green's or Hudgins's state-law claims. *See* disc. *supra* at 21-23. Plaintiffs' state-law IRFRA (Count II) and common law (Count III) claims are time-barred.

**D.    The Complaints Fail To State An IRFRA Claim**

**1.    Damages Do Not Exist As An IRFRA Remedy**

Plaintiffs' IRFRA claims (Count II) should be dismissed, because IRFRA does not provide for a damages remedy as a matter of law. IRFRA provides that a government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest. 775 ILCS 35/15. Although Plaintiffs allege that transcendental meditation imposed a substantial burden on their exercise of religion, they have disclaimed injunctive relief (*Hudgins* Compl. ¶¶ 166-72; *Green* Compl. ¶¶ 152-57), and no monetary remedies are available.

Defendants incorporate by reference their extensive *Williams* summary judgment briefing on the legal availability of IRFRA damages. *See Williams* Dkt. 215 at 5-11, Dkt. 236 at 11-13. To summarize: IRFRA "does not specifically provide for recovery of damages." *See Am. Islamic Ctr. v. City of Des Plaines*, 32 F. Supp. 3d 910, 916 (N.D. Ill. 2014) (Kennelly, J.). IRFRA states that a person whose "exercise of religion has been burdened in violation of this Act . . . may obtain appropriate relief against a government." 775 ILCS 35/20. What constitutes "appropriate relief" is an "inherently context dependent" standard that typically permits injunctive relief, but only sometimes authorizes damages. *Sossamon v. Texas*, 563 U.S. 277, 286-88 (2011). Unlike other

Illinois civil rights statutes, IRFRA does not expressly authorize damages against Illinois local governments. *Cf. Teale v. Sears, Roebuck and Co.*, 66 Ill.2d 1, 4-6 (1976) (holding no implied damages remedy existed under the Illinois Age Discrimination Act); *Williams* Dkt. 215 at 8-9. Illinois has neither any comparable statute to Section 1983 authorizing money damages for Illinois civil rights violations, nor any free-standing state-law theory of implied constitutional torts for damages. *See, e.g.*, *Kole v. Vill. of Norridge*, 941 F. Supp. 2d 933, 962 (N.D. Ill. 2013); *Klein v. Vill. of Mettawa*, 2014 WL 1661631, at *4 (N.D. Ill. April 25, 2014); *Williams* Dkt. 215 at 10. No Illinois state or federal court has ever awarded IRFRA damages because the remedy does not exist. *See Williams* 215 at 9.

IRFRA's compelling-interest standard may help some plaintiffs obtain injunctive relief against Illinois government actors, but it does not authorize damages. Plaintiffs do not seek any form of injunctive or declaratory relief. *Hudgins* Compl. ¶¶ 166-72; *Green* Compl. ¶¶ 152-57. Since IRFRA's "appropriate relief" clause only authorizes injunctive remedies, this Court should dismiss Plaintiffs' IRFRA claims. *See Williams* Dkt. 65 at 45 (dismissing all claims for injunctive relief).

### 2.    IRFRA Does Not Permit Claims Against Non-Government Entities

IRFRA's "plain language is clear that [it] only applies when the government is a party." *Cf. Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731, 737 (7th Cir. 2015) (interpreting federal RFRA). IRFRA does not create a cause of action against private actors. *See* 775 ILCS 35/15 (defining "Government"); *Banks v. Dougherty*, 2010 WL 747870, at *11 (N.D. Ill. Feb. 26, 2010) ("The duty not to substantially burden Plaintiffs' free exercise of religion [is] imposed only on governments."). As the Seventh Circuit has recognized: "A private party cannot step into the shoes of the 'government' and demonstrate a compelling governmental interest . . . If the government is not a party, no one can provide the appropriate relief." *Listecki*, 780 F.3d at

24

736-37.  The University, as a private research institution, is not a "government" entity.  Neither is DLF, a private nonprofit.  *See id.*; *see also Hudgins* Compl. ¶¶ 13-15; *Green* Compl. ¶¶ 13-15.  As private actors, DLF and the University do not fall within IRFRA's ambit.  *See* 775 ILCS 35/15 (prohibiting "Government" from substantially burdening religion).  Plaintiffs have failed to plead that the University and DLF are Governments under IRFRA.  *See* disc. *supra* at 15-19.  Plaintiffs' IRFRA claim against the University and DLF must be dismissed.

### 3.      In The Alternative, The IRFRA Claim Is Barred By *Monell*

In the alternative, if the Court adopts Plaintiffs' invitation to interpret IRFRA by reference to federal Section 1983 doctrines (*see Williams* Dkt. 225), then *Monell* would bar damages against all Defendants.  *See* disc. *supra* at 7-10.

### E.      Plaintiffs Fail To State A Claim For Common Law And Constitutional Law Duties

In Count III, Plaintiffs assert a claim they titled "Breach of Constitutional Law Duties to Plaintiff."  The basis for this claim is vague and confusing.  On the one hand, Plaintiffs make vague and repeated references to Bogan students being "intended beneficiaries" of the Board's Services Agreements with the University and DLF, hinting at some type of contractual third-party beneficiary claim.  *See Hudgins* Compl. ¶¶ 162-64; *Green* Compl. ¶¶ 146, 149-50.  On the other hand, Plaintiffs appear to be attempting to recover damages under some unspecified section of the Illinois Constitution.  *See Hudgins* Compl. ¶¶ 160, 163, 169; *Green* Compl. ¶¶ 145, 148, 155.  Whatever Plaintiffs' claim may be, neither theory passes muster.  When an attempt was made to add the same common law claims in *Williams*, this Court expressly rejected each of those theories as "futile."  *See* Ex. 1 at 9-12.

### 1.      Plaintiffs Are Not Third-Party Contract Beneficiaries

First, although Plaintiffs seem to claim their Illinois common law rights were violated as third-party beneficiaries of the agreements between the Board and the University and DLF

(*Hudgins* Compl. ¶ 169, *Green* Compl. ¶ 155), no such rights exist. To state a third-party beneficiary claim under Illinois law, "the alleged third-party beneficiary must be expressly named in the contract." *See Carlson v. Rehab. Inst. of Chi.*, 50 N.E.3d 1250, 1256 (Ill. App. Ct. 2016). But students and parents (including Plaintiffs) are not named beneficiaries anywhere in any contract cited in the Complaints. *See generally*, University Master Research Servs. Agmt. (*Hudgins* Compl. Ex. L; *Green* Compl. Ex. 4); DLF Servs. Agmt. (*Hudgins* Compl. Ex. E; *Green* Compl. Ex. 11). Although the University agreement generally refers to studying how programs and interventions affect student's academic performance (*Hudgins* Compl. Ex. L at 16; *Green* Compl. Ex. 4 at 16) a passing reference to the fact that the University generally intends to study programs that might affect students is insufficient under Illinois law to render students intended third-party beneficiaries. *See*, *e.g.*, *Carlson*, 50 N.E.3d at 1256 ("[T]he mere reference to a party in a contract will not confer third-party beneficiary status."); *accord Estate of Willis v. Kiferbaum Constr.*, 830 N.E.2d 636, 643 (Ill. App. Ct. 2005) (in order to overcome presumption against construing contract in favor of third-party beneficiary status, plaintiff must point to "an implication so strong as to be practically an express declaration").

The same holds true for the Service Agreement between DLF and the Board. That Agreement's sporadic, general references to CPS students does not make Plaintiffs or any other students third-party beneficiaries to the contract. Further, the provision of that Agreement upon which Plaintiffs rely for their contention that DLF somehow owed them obligations as a "fiduciary" is actually contained in a section of the Agreement entitled "Standards of Performance." *Hudgins* Compl. Ex. E, at 2-3 ¶ 6; *Green* Compl. Ex. 11, at 2-3 ¶ 6. That section discusses DLF's obligations *to the Board* to maintain as confidential "information and records *of the Board*" in the course of performing services *for the Board*. *Id*. It does not name

26

any of the Plaintiffs or say anything regarding obligations to any student. *Id*. This "fiduciary" language does not create a fiduciary relationship between DLF and Plaintiffs, much less any other student.

When Plaintiffs' counsel attempted to amend the Complaint in *Williams* to assert the same third-party beneficiary theories, the Court rejected their theory. *See* Ex. 1 at 9-12. In a hearing, the Court first asked counsel to point to a provision of the Services Agreements between DLF and the Board that would support a fiduciary relationship between DLF and any student. *See* Ex. 2 (*Williams* Dkt. 180, 4/19/2022 Tr. at 9-11, 14-15). When plaintiffs' counsel there pointed to the same provision of that Agreement that Plaintiffs rely upon here, the Court responded "[t]here's no plausible basis for that sentence to create a fiduciary duty that runs to your clients." *Id.* at 14-15. The Court then provided a detailed explanation as to why neither the University's or DLF's Agreements conferred third-party beneficiary status on students to sue under either of those Agreements. *See* Ex. 1 at 9-12. That same reasoning should apply here, and Count III should be dismissed.

### 2. Plaintiffs Have No Private Right Of Action for Damages Under The Illinois Constitution

It is well-settled "Illinois courts will not entertain a suit for *damages* under the Illinois Constitution absent an express 'self-executing' constitutional provision granting a right of act, such that 'no implementing legislation is necessary to sustain a cause of action.'" *See Klein*, 2014 WL 1661631, at *4 (quoting *Baker v. Miller*, 636 N.E.2d 551, 553 (Ill. 1994)); *Bonnstetter v. City of Chi.*, 2014 WL 3687539, at *19 (N.D. Ill. July 24, 2014) (no private right of action under due process protections of Ill. CONST. art. I, § 2); *Richard v. Lukensmeyer*, 1999 WL 261835, at *3 (N.D. Ill. Apr. 12, 1999) (no private right of action under protections for unlawful search and seizure under Ill. CONST. art. I, § 6).

27

While Plaintiffs do not cite to a section of the Illinois Constitution upon which they intend to rely (*see Hudgins* Compl. ¶ 169, *Green* Compl. ¶ 155), Article I § 3 of the Illinois Constitution protects religious freedoms. *See* Ill. CONST. art. I, § 3. That section, however, does not contain any self-executing language and, therefore, does not provide for a private right of action. As this Court previously held when Plaintiffs' counsel tried to bring an identical claim in the *Williams* case: "[A]s far as the Illinois Constitution is concerned, there's just this general reference to, you know, very sort of general provisions in the Illinois Constitution. I don't think there's a basis in Illinois law for a private right to sue in – for breach of that particular constitutional provision. So Count 3 is futile anyway." *See* Ex. 1 at 11. That same reasoning again applies here, and Count III should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Combined Motion to Dismiss Plaintiffs' Complaints. In light of the repeated failures of Plaintiffs' legal theories (*see*, *e.g.*, *Williams* Dkt. 65, 81, 203, 212, 220), dismissal should be with prejudice. Should any claims survive, relief on those claims should be capped at nominal damages.

28

Dated: March 31, 2023

Respectfully submitted,

*/s/ Johanna Spellman*
Johanna Spellman, One of the Attorneys for
Defendant The University of Chicago

Mark S. Mester (IL Bar No. 6196140)
  mark.mester@lw.com
Johanna Spellman (IL Bar No. 6293851)
  johanna.spellman@lw.com
Renatta Gorski (IL Bar No. 6332737)
  renatta.gorski@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Carolyn M. Homer (*pro hac vice*)
  carolyn.homer@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

*/s/ James J. Sipchen* (with consent)
James J. Sipchen, One of the Attorneys for
Defendant The David Lynch Foundation

James J. Sipchen (IL Bar No. 6226113)
 jsipchen@pretzel-stouffer.com
Pretzel & Stouffer, Chartered
1 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
Telephone: (312) 346-1973
Facsimile: (312) 346-8242

*/s/ Elizabeth K. Barton* (with consent)
Elizabeth K. Barton, One of the Attorneys for
Defendant Board of Education of the City of
Chicago

29

Elizabeth K. Barton (IL Bar No. 6295848)
 ekbarton@cps.edu
Kaitlin T. Salisbury
 ktsalisbury@cps.edu
Christina Rosenberg
 crosenberg@cps.edu
Board of Education of the City of Chicago
Law Department
1 N. Dearborn Street, Suite 900
Chicago, Illinois 60631
Telephone: (773) 553-1700

30

## CERTIFICATE OF SERVICE

I, Johanna Spellman, certify that on March 31, 2023 a copy of the foregoing document was

served via CM/ECF on all counsel of record as listed below.

John W. Mauck
    jmauck@mauckbaker.com
Judith A. Kott
    jkott@mauckbaker.com
MAUCK & BAKER, LLC
1 North LaSalle Street, Suite 600
Chicago, Illinois 60602
Telephone: (312) 726-1243
Facsimile: (866) 619-8661

Sorin Adrian Leahu
    sleahu@leahulaw.com
Leahu Law Group, LLC
53 W. Jackson Blvd.
Suite 1527
Chicago, IL 60604
Telephone: (847) 529-7221

*Counsel for Plaintiffs*

Elizabeth K. Barton
    ekbarton@cps.edu
Kaitlin T. Salisbury
    ktsalisbury@cps.edu
Christina L. Rosenberg
    clrosenberg@cps.edu
Board of Education of the City of Chicago
1 North Dearborn Street, Suite 900
Chicago, Illinois 60602
Telephone: (312) 553-1700

*Counsel for Board of Education of the City of Chicago*

James J. Sipchen
    jsipchen@pretzel-stouffer.com
PRETZEL & STOUFFER, CHARTERED
1 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
Telephone: (312) 346-1973
Facsimile: (312) 346-8242

Mark L. Zaiger
    mlz@shuttleworthlaw.com
SHUTTLEWORTH & INGERSOLL, P.C.
500 U.S. Bank Building,
P.O. Box 2107
Cedar Rapids, Iowa 52406
Telephone: (319) 365-9461

*Counsel for The David Lynch Foundation*

Date: March 31, 2023

*/s/ Johanna Spellman*
Johanna Spellman, One of the Attorneys for
Defendant the University of Chicago