# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KAYA HUDGINS,                                    )
                              Plaintiff,          )
v.                                                )
                                                  )   Case No.:  23-cv-00218
BOARD OF EDUCATION OF THE                         )
CITY OF CHICAGO, et al.,                          )   Honorable Judge Matthew J. Kennelly
                                                  )
                              Defendants.         )
_____)
MARIYAH GREEN, and SHAVON                         )
GIBSON,                                           )
                              Plaintiffs,         )   Case No.:  23-cv-00646
v.                                                )
                                                  )   Honorable Judge Matthew J. Kennelly
BOARD OF EDUCATION OF THE                         )
CITY OF CHICAGO, et al.,                          )
                                                  )
                              Defendants.         )

**PLAINTIFFS' COMBINED AMENDED RESPONSE BRIEF IN OPPOSITION TO
DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR COMBINED
MOTIONS TO DISMISS THE RELATED CLAIMS OF KAYA HUDGINS,
MARIYAH GREEN, and SHAVON GIBSON**

John W. Mauck                          Sorin A. Leahu
Judith A. Kott                         **Leahu Law Group**
**MAUCK & BAKER, LLC**                 53 W. Jackson Blvd. #1527
One N. LaSalle St., Ste 600            Chicago, IL 60604
Chicago, Illinois 60602                847-529-7221
312-726-1243                           sleahu@leahulaw.com
jmauck@mauckbaker.com
jkott@mauckbaker.com

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ------------------------------------------------------------------------------------1

LEGAL STANDARD ------------------------------------------------------------------------------2

ARGUMENT ----------------------------------------------------------------------------------------2

    I.    Plaintiffs' Federal Law Claims Are Not Time-Barred ------------------------------------2

        A.  Mariyah Green's §1983 Claim Against the University Is Not Time-Barred

            Because of the Additional Tolling Before Amontae Williams' Motion for Class

            Certification Was Denied ----------------------------------------------------------------2

        B.  Shavon Gibson's §1983 Claims Are Not Time-Barred ----------------------------3

    II.   Defendants' Motion to Dismiss Should Be Denied as the Complaints Allege Valid

        Section 1983 Claims --------------------------------------------------------------------------6

        A.  The Complaints Adequately Plead §1983 Liability Under *Monell* ------------------6

            1.  The Board --------------------------------------------------------------------6

            2.  David Lynch Foundation ----------------------------------------------------7

            3.  University of Chicago ------------------------------------------------------8

        B.  The Complaints Adequately Allege State Action by DLF and the University------9

            1.  State-Action Issue is Decided on a Case-By-Case Basis ------------------9

            2.  Defendants DLF and University Were Acting Under Color of Law ----------11

            3.  Plaintiffs Have Adequately Plead Willfulness -------------------------------15

        C.  The Case Law Does Not Limit Plaintiffs' Legal Remedies to Only Nominal

            Damages ---------------------------------------------------------------------------18

            1.  The Evidence Supports an Award of Compensatory Damages for Kaya

                Hudgins --------------------------------------------------------------------18

i

**Page**

       2.   Compensatory Damages are Adequately Plead in Mariyah Greens' Complaint ----------------------------------------------------------------------------------20

III.   Plaintiffs' State-Law Claims Are Not Time-Barred ---------------------------------------20

     A.  Plaintiff's IRFRA and Illinois Common Law Claims—(Subject to 1-year statute of limitations) -----------------------------------------------------------------------------20

     B.  Plaintiffs' State Law Claims are Timely Filed ------------------------------------------21

IV.   The Complaints State Valid IRFRA Claims ---------------------------------------------23

     A.  Damages Do Exist for an IRFRA Remedy Given the "Appropriate Relief" Language Contained in *775 ILCS 35/20* ----------------------------------------23

     B.  IRFRA Does Permit Claims Against DLF and the University ----------------------24

     C.  *Monell* Does not Bar IRFRA Claims ----------------------------------------------------26

V.   Plaintiffs' Complaints Contain Sufficient Claims for Common Law And Constitutional Law Duties ----------------------------------------------------------------------27

     A.  Plaintiffs are Third-Party Contract and Common Law Beneficiaries -------------27

CONCLUSION ----------------------------------------------------------------------------------------29

## <u>TABLE OF AUTHORITIES</u>

<b><u>Page(s)</u></b>

## <u>CASES</u>

*Crenshaw v. Baynerd.*
    180 F. 3d 866, 868 (7th Cir. 1999); -----------------------------------------------------------------2

*Anchor Bank, FSB v. Hofer*
    649 F. 3d 610, 614 (7th Cir. 2011) -------------------------------------------------------------------2

*American Pipe & Construction Co. v. Utah*
    414 U.S. 538 (1974) -------------------------------------------------------------------------------------2

*Richards v. Mitcheff*, 696 F. 3d 635, 637 (7th Cir. 2012).
    696 F. 3d 635, 637 (7th Cir. 2012) --------------------------------------------------------------2,4,6

*Howard v. Proviso Township #209*
    Case # 1:21-cv-03573 (N.D. Ill. July 2, 2021) -----------------------------------------------------4,5

*Gomez v. Toledo*
    446 U.S. 635, 640 (1980) -----------------------------------------------------------------------------4

*Xechem, Inc. v. Bristol-Myers Squibb Co.,*
    372 F.3d 899, 901 (7th Cir. 2004). ------------------------------------------------------------------4

*Johnson v. Shelby*
    574 U.S. 10, 11-12 (2014).----------------------------------------------------------------------------4

*Beamon v. Marshall & Ilsley Trust Co.*
    411 F.3d 854, 860-61 (7th Cir. 2005)----------------------------------------------------------------4

*Hedrich v Board of Regents of Univ. of Wisc.*
    274 F. 3d 1174, 1182 (7th Cir. 2001)---------------------------------------------------------------4

*Miller v. Runyon*,
    77 F.3d 189, 191 (7th Cir. 1996) ---------------------------------------------------------------------4

*Thomas v. City of Chicago*,
    Case No. 07-cv-4969, 2009 WL 1444439, at *4 (N.D. Ill. May 21, 2009)----------- ----------4

*Sellars v. Perry*,
    80 F.3d 243, 245 (7th Cir. 1996)---------------------------------------------------------------------5

*Hondo, Inc. v. Sterling,*
    21 F.3d 775, 778 (7th Cir.1994)----------------------------------------------------------------------5

**Page(s)**

*Brown v. Dart,*
　No. 14-CV-07945, 2015 WL 4035568, at *3 (N.D. Ill. June 30, 2015)----------------------6-8

*Monell v. Department of Social Services of City of New York,*
　436 U.S. 658 (1978)------------------------------------------------------------6-8,26

*Vickery v. Jones*
　100 F. 3d 1334, 1345 (7th Cir. 1996)----------------------------------------------- 9,12

*Tarpley v. Keistler, Jr., et al.*,
　188 F. 3d 788, 793 (7th Cir., 1999)-------------------------------------------------10

*Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31; AFL-CIO*
　942 F. 3d 352, 363-64 (7th Cir. 2019)-------------------------------------------11-12

*Abood v. Detroit Bd. of Ed.,*
　431 U.S. 209 (1977)--------------------------------------------------------------12

*Malnak et al. v. Yogi, et al.,*
　592 F. 2d 197 (3rd Cir. 1979)-----------------------------------------------------12

*Hallinan et al. v. Fraternal Order of Police of Chicago Lodge No. 7, et al.,*
　570 F. 3d 811 (7th Cir., 2009)----------------------------------------------------13

*Blum v. Yaretsky,*
　457 U.S. 991, 1004 (1982)------------------------------------------------------- 13

*Case v. Milewski,*
　327 F. 3d 564, 566-68 (7th Cir. 2003)------------------------------------------------13

*McDorman et al. v. Smith, et al.*
　437 F. Supp. 2d 768, 773 (N.D. Ill., June 14, 2006)-----------------------------------14

*Higgs v. Carver,*
　286 F. 3d 437, 439 (7th Circ. 2002)------------------------------------------------14

*Walker v. Thompson,*
　288 F. 3d 1005, 1007 (7th Cir. 2002) ------------------------------------------------14

In *Separation of Hinduism From Our Schools, et al. v.
Chicago Public Schools, City of School District #299, et al*.
　2021 WL 2036536-----------------------------------------------------------------18-20

*Freedom from Religion Found., Inc. v. Lew,*
　773 F. 3d 815, 819 (7th Cir. 2014)------------------------------------------------19

iv

**Page(s)**

*Freedom From Religion Found, Inc. v. Obama*,
    641 F. 3d 803, 807-8 (7th Cir., 2011)---------------------------------------------------------------19

*Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*,
    199 Ill. 2d 325 at 345  (2002)-----------------------------------------------------------------21

*Ferguson v. McKenzie*
    202 Ill. 2d 304, 307, 780 N.E.2d 660, 662 (2001)---------------------------------------------21,22

*Goza v. Rainmaker Campground, Inc.*,
    2014 WL 5543989, at *2 (C.D. Ill. Nov. 3, 2014)---------------------------------------------22

*Lane v. Dupage Cnty. Sch. Dist. 45*,
    No. 13 CV-5386, 2014 WL 518445, at *11 (N.D. Ill. Feb. 10, 2014)-------------------------22

*Banks et al. v. Dougherty, et al.*,
    No. 07-CV-56542010 WL 747870 at *11 (N.D., Ill. Feb. 26, 2010)------------------------23-25

*Sossamon v. Texas*,
    563 U.S. 277, 286-88 (2011)------------------------------------------------------------------23

*Kole v. Village of Norridge*,
    941 F. Supp. 2d 933, 962 (N.D. Ill. April 19, 2013)------------------------------------------23,24

*Klein v. Vill. of Mettawa*,
    No. 13 C 5106, 2014 WL 1661631, at *5 (N.D. Ill. Apr. 25, 2014)----------------------------24

*Teale v. Sears, Roebuck and Co.*,
    66 Ill. 2d 1, 4, 7 (1976)-----------------------------------------------------------------------24

*Listecki v. Official Committee of Unsecured Creditors*,
    780 F. 3d 731, 737 (7th Cir. 2015)-----------------------------------------------------------25

*Wyatt v. Cole*,
    504 U.S. 158, 161 (1992)------------------------------------------------------------------- 26

*McCormick v. City of Chicago*,
    230 F. 3d 319, 324 (7th Circ. 2000)---------------------------------------------------------26

*Teesdale v. City of Chicago*,
    690 F. 3d 829, 833 (7th Cir. 2012)-----------------------------------------------------------26

*Carlson v. Rehab. Inst. of Chi.*,
    50 N.E. 3d 1250, 1256 (11. App. Ct. 2016)--------------------------------------------------27

v

## **STATUTES**

*42 U.S.C. § 1983*------------------------------------------------------------------------------See generally

*Fed. R. Civ. P. 9*----------------------------------------------------------------------------------14

*775 ILCS 35/20*------------------------------------------------------------------------------23,24

*775 ILCS 35/10(a)(3)*------------------------------------------------------------------------26

## **CONSTITUTIONAL PROVISIONS**

Ill. CONST. art. I, § 3 ------------------------------------------------------------------------28

Ill. CONST. art. I, § 12 ----------------------------------------------------------------------29

NOW COME Plaintiffs KAYA HUDGINS, MARIYAH GREEN, and SHAVON

GIBSON (hereinafter referred to as "Plaintiffs") by and through their attorneys Mauck & Baker,

LLC, and in their Combined Response Brief in Opposition to Defendants' Memorandum in

Support of Their Combined Motion to Dismiss the Related Claims of Kaya Hudgins, Mariyah

Green, and Shavon Gibson, state as follows:

## <u>INTRODUCTION</u>

On Feb. 2, 2023, Plaintiffs Mariyah Green and Shavon Gibson filed their Complaint

seeking redress under 42 U.S.C. Section 1983 for deprivations of their constitutional rights under

the First and Fourteenth Amendment to the Constitution.  Likewise, Plaintiff Kaya Hudgins also

filed her Complaint on Feb. 2, 2023, on behalf of herself and students similarly situated seeking

redress under 42 U.S.C. Section 1983 for deprivations of her constitutional rights under the First

and Fourteenth Amendment.  On Feb. 25, 2023, Plaintiff Kaya Hudgins filed her Motion for

Class Certification that is pending with a briefing schedule in her case.  In Count I of the

Plaintiffs' respective Complaints, Plaintiffs allege that Defendants' actions in collaborating and

jointly participating in the implementation and facilitation of the "Quiet Time" training and

program that coerced underage students and others to engage in religious practices and rituals

based in Hinduism was in violation of the Establishment Clause and Free Exercise Clause. As set

forth in Count II of Plaintiffs' Complaints, Plaintiffs allege that the Defendants' joint actions in

the implementation and facilitation of the "Quiet Time" training and program that coerced

students and others to engage in religious practices and rituals based in Hinduism was a violation

of the Illinois Religious Freedom Restoration Act.   Additionally, Plaintiffs allege in Count III of

their respective Complaints that Defendants violated their rights, CPS students' and parents' rights

under the Illinois Constitution, the Illinois Religious Freedom Restoration Act, and Illinois common

1

law. As set forth for the reasons below, Plaintiffs request this Honorable Court deny Defendants'

Motion to Dismiss Plaintiffs' Complaints.

## <u>LEGAL STANDARD</u>

In reviewing a Motion to Dismiss, the Courts accept all facts alleged in the Complaint as true and draw all reasonable inferences in the light most favorable to the Plaintiff and making all possible inferences from the allegations in Plaintiff's favor. *Crenshaw v. Baynerd*, 180 F. 3d 866, 868 (7th Cir. 1999); *Anchor Bank, FSB v. Hofer,* 649 F. 3d 610, 614 (7th Cir. 2011) "A motion under 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F. 3d 635, 637 (7th Cir. 2012)

## <u>ARGUMENT</u>

### I. <u>Plaintiffs' Federal Law Claims Are Not Time-Barred</u>

### A. <u>Mariyah Green's § 1983 Claim Against the University Is Not Time-Barred Because of the Additional Tolling Before Amontae Williams' Motion for Class Certification Was Denied</u>

Although Defendants' Memorandum of Law in Support of Their Combined Motions to Dismiss Plaintiffs' Claims (hereinafter referred to "Dkt. 29", or "Defs.' Mem. Supp. Comb. Mot. Dismiss") alleges that Mariyah Green's § 1983 claims against the University are time-barred, a closer look at the case law and facts suggest a different conclusion. The United States Supreme Court held that an original class action suit, upon being filed "tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, (1974). Furthermore, the U.S. Supreme Court reasoned that the tolling should continue up until denial of class certification for a Plaintiff because "absent members may learn of and rely on a suit even though the class has not been certified." *Id.,* at 561.

Plaintiff Mariyah Green's § 1983 Claims are not time-barred because she is entitled under the *American Pipe* ruling to add the time-period between Amontae Williams' filing a class action Complaint and the Order entered denying Amontae's Motion for Class Certification. Mariyah Green's 18th birthday was on January 28, 2020, so under Illinois law for minors, she had until January 28, 2022 to file with no tolling. However, Amontae Williams filed his putative student Class Action Complaint on September 25, 2020. This Court ultimately denied Amontae Williams' Motion for Class Certification on September 13, 2022. Under the above-referenced case law, Mariyah Green (as an individual claimant but not as a putative class representative) is entitled to add the 719-day federal tolling time-period between Amontae Williams filing the Class Action Complaint (on September 25, 2020), and the Order denying his Motion for Class Certification (on September 13, 2022), to the two years after Mariyah Green's 18th birthday. Thus, Mariyah Green would have until January 17, 2024 to file her § 1983 Complaint.

Defendants' argument that the tolling for Plaintiff Mariyah Green only lasts up until the Order was entered on May 21, 2021 dismissing Plaintiff Amontae Williams' § 1983 claims against the University is mistaken. *See* Dkt. 29 at 9. As of May 21, 2021, the Court had not yet made its ruling on Plaintiff Amontae Williams' Motion for Class Certification and under the reasoning of *American Pipeline supra*, Mariyah Green may have known of Amontae Williams' pending litigation and relied on it rather than filing her own § 1983 claim. It was only when Plaintiff Amontae Williams' Motion for Class Certification was ultimately denied that other class members are deemed to have known their claims would no longer be represented. Thus, Plaintiff Mariyah Green's § 1983 Claims against the University are not time-barred.

## B. __Shavon Gibson's § 1983 Claims Are Not Time-Barred__

Additionally, Defendants' argument that Plaintiff Shavon Gibson's § 1983 is time-barred is also without merit based on the case law and the facts. *See* Dkt. 29 at 6-8.

The Seventh Circuit has held that a plaintiff's complaint cannot be dismissed under Rule 12(b)(6) because it fails to plead around an affirmative defense. *Richards v. Mitcheff*, 696 F. 3d 635, 637 (7th Cir. 2012). "A complaint need not foresee nor overcome affirmative defenses, including one based on the statute of limitations." *Howard v. Proviso Township #209*, Case No. 1:21-cv-03573 at *4 (N.D. Ill. July 2, 2021), citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980), and *Xechem, Inc. v. Bristol-Myers Squibb Co.,* 372 F.3d 899, 901 (7th Cir. 2004). "It is only the sufficiency of the facts pled in the complaint that is the subject of a 12(b)(6) motion". *Johnson v. Shelby*, 574 U.S. 10, 11-12 (2014). Like other defenses, the statute of limitations defense is subject to equitable doctrines. *Howard v. Proviso Township #209,* Case No. 1:21-cv-03573 at *4 (N.D. Ill. July 2, 2021), citing *Beamon v. Marshall & Ilsley Trust Co*., 411 F.3d 854, 860-61 (7th Cir. 2005), and *Hedrich v. Board of Regents of Univ. of Wisc. Systems*, 274 F.3d 1174, 1182 (7th Cir. 2001).

Additionally, the Seventh Circuit held that equitable tolling applies in a case where a plaintiff "because of disability, irremediable lack of information, or other circumstances beyond his control just cannot reasonably be expected to sue in time, the statute of limitations will be tolled until he is able through the exercise of proper diligence to file his suit.:" *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996) In the *Howard* case, the court held that even though defendants moved to dismiss the plaintiff's claim based on the statute of limitations because she filed her charge more than 300 days after the discriminatory event occurred, the facts alleged in Howard's complaint suggested that an argument could be made against applying the statute of limitations

based on equitable tolling.  *Howard v. Proviso Township #209* (*Howard v. Proviso Township #209*, Case No. 1:21-cv-03573 at *6 (N.D. Ill. July 2, 2021), citing *Thomas v. City of Chicago*, Case No. 07-cv-4969, 2009 WL 1444439, at *4 (N.D. Ill. May 21, 2009)

It is well-established that a § 1983 claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of his action.  *Sellars v. Perry*, 80 F.3d 243, 245 (7th Cir. 1996), citing *Hondo, Inc. v. Sterling,* 21 F.3d 775, 778 (7th Cir.1994).  However, the damages in this case of *ongoing* violations continued to accrue as her daughter Mariyah was coerced into feigned meditation to avoid jeopardizing her basketball eligibility.  Is Ms. Gibson also entitled to tolling based on the pendency of Darryl Williams parental class action certification motion?  The logic of *American Pipe* says she may have waited until Darryl's claim was dismissed and even that dismissal is not final but remains subject to appeal once the Williams case ends at the District level.

Moreover, at no time did Plaintiff Shavon Gibson receive a consent form or even an "opt-out" form to sign for her daughter Mariyah Green's participation in TM and the "Quiet Time" program.  Defendants have made no showing (by Declaration, consent form, or otherwise) that Ms. Gibson was fully and truthfully informed of the religiosity of the entire TM teaching.  As such, a jury could reasonably find that Shavon Gibson did not become aware of her parental-rights damages until several years after discovering that her daughter Mariyah Green had been exposed to a Transcendental Meditation.   Thus, the statute of limitations argument raised by Defendants is subject to equitable tolling in this case.

Not only does equitable tolling apply to the filing of Plaintiff Shavon Gibson's §1983 claim, as the aforementioned case law from the Seventh Circuit clearly states, Plaintiffs were

also not required to see or overcome the statute of limitations affirmative defense when their respective Complaints were filed, as argued above. *Richards v. Mitcheff*, 696 F. 3d 635, 637 (7th Cir. 2012).

**II.**      **Defendants' Motion to Dismiss Should Be Denied as the Complaints Allege Valid Section 1983 Claims**

     A.      **The Complaints Adequately Plead §1983 Liability Under *Monell***

     **1.**      **The Board**

Defendants also claim that Plaintiffs have not plead §1983 liability under *Monell* as it relates to the Board because they allege that Plaintiffs have failed to plead that any Board practice was the "moving force" that caused them to encounter Hindu religious practices at Bogan High School. (*See* Dkt. 29 at 10-11). However, the TM/Quiet Time religious teaching and indoctrination of Plaintiffs, and similarly situated students at Bogan High School could not (and would not) have occurred but for the Board of Education giving access to students, and imposing and endorsing the Quiet Time program.

A sister Court denied defendant Dart's Motion to Dismiss in a case involving a former inmate's claims that he sustained a wrist injury when he was denied appropriate medical treatment by Dart, et al. in violation of his Fourteenth Amendment rights. *Brown v. Dart,* No. 14-CV-07945, 2015 WL 4035568, at *3 (N.D. Ill. June 30, 2015) In denying Dart's claim that the plaintiff failed to state a proper claim against him in his official capacity under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), the *Brown* Court held that Brown had sufficiently plead that he did not receive from defendants "the reasonable measures to address a substantial risk of serious harm" as a result of Dart's policies and customs. *Id.* Furthermore, "the allegations in the Complaint also plausibly claim that Dart's policies and practices were the *moving*

6

*force* behind Brown's inability to receive timely and appropriate medical services." *Id*. (emphasis added). The Court also reasoned that Brown had plead sufficient facts to allege the existence of policies and practices that deprive multiple jail detainees of their right to adequate medical treatment under the Constitution. *Id*. Specifically, the *Brown* court held that the elimination of the jail's orthopedic clinic at issue, along with the medical scheduling and transportation practices that the plaintiff complained of, were sufficiently related to plaintiff former inmate's claimed injury and have affected "all detainees with orthopedic ailments." *Id*, at 4.

Like the former prison inmate in the Brown case, Plaintiffs in this case have sufficiently plead that the Defendant Board's policies and practices of the implementation and enforcement of TM and the "Quiet Time" program at Bogan (combined with their granting access to DLF and the University for the TM/Quiet Time religious teaching and indoctrination of Plaintiffs and similarly situated Bogan students) were the *moving force* behind the deprivation of Plaintiffs' §1983 Constitutional rights and their injuries. The Quiet Time/TM program was the governmental action coercing minors to engage in religious practices. As the *Brown* Court held, this Honorable Court should likewise deny Defendants' Motion to Dismiss as Plaintiffs have adequately plead §1983 liability under *Monell* as it relates to the Board.

## 2. **David Lynch Foundation**

The argument in Defs.' Mem. Supp. Comb. Mot. Dismiss that Plaintiffs have failed to allege any facts to support that the David Lynch Foundation ("DLF") had a policy that was the "moving force" behind any alleged constitutional violation is not correct. *See* Dkt. 29 at 13. Plaintiffs' respective Complaints contain allegations that Plaintiffs (as well as similarly situated students) were required to participate in the TM "puja ceremony" prior to their expected daily involvement and participation in the "Quiet Time" program. *See Green* Compl., Paras. 85, 92;

7

*Hudgins* First Amended Compl., Para. 99.  Furthermore, The TM/Quiet Time religious teaching and indoctrination of Plaintiffs, and similarly situated students at Bogan High School, could not (and would not) have occurred but for DLF designing, implementing, and furnishing instructors trained in TM.  Based on the aforementioned *Brown* ruling, this Honorable Court should find that DLF's actions were the *moving force* behind the deprivation of Plaintiffs' Section 1983 Constitutional rights and their claimed injuries.

3.      <u>**University of Chicago**</u>

Next, Defendants allege that the Complaints filed by Plaintiffs do not resolve the deficiencies found in Amontae Williams' §1983 claim against the University when the Court previously dismissed his claim against the University.  (*See* Dkt. 29 at 13)  Once again, Defendants argue that Plaintiffs cannot satisfy *Monell* because they allege that Plaintiff cannot show through "deliberate" conduct, that any policy by the University was the "moving force" behind any of Plaintiffs' claimed injuries.  (*See* Dkt. 29 at 11, 14)

However, Plaintiffs' respective complaints contain specific pleadings as it relates to the University's involvement in TM and Quiet Time.  As alleged in the Complaints, it was the University that did the following: " 1)  Submitted the "Research Review Board Modification & Continuing Review Application" to the Board for approval of the Quiet Time program; 2)  obligated to perform its Quiet Time research within the restrictions imposed by the Board under the parties' "Guidelines for External Research and Data Collection in Chicago Public Schools" agreement; 3) conducted focus groups in furtherance of its Quiet Time research program; and 4) provided advice to Bogan High School leadership for the school's class period scheduling to incorporate the Quiet Time program ."  *See Green* Compl., Paras. 105-108; *Hudgins* First Amended Compl., Para. 115-118. Additionally, Plaintiffs have alleged "collaboration  between the University and DLF at the outset of the "Quiet Time" program such as an e-mail between DLF representatives and John

8

Wolf, Senior (senior project manager for the University in charge of the University implement action of "Quiet Time" duties), Lydia Jessup, and Chelsea Hanlock, *See* Ex. 1 (UNIVERSITY_004349), asking that the group arrange to "meditate together," and saying, "This is recommended a few weeks after completing the TM training." This e-mail is also evidence that all five leaders took TM training, and therefore, knew the Puja ceremony, received mantras, and knew minor students would be subjected to the same training. *See Hudgins* First Amended Compl., Para. 119.

The allegations in Plaintiffs' respective Complaints, and as stated above, demonstrate that the University's actions were a moving force in implementing the TM and daily Quiet Time program that violated Plaintiffs, and similarly situated students', constitutional rights. The bottom line is that the TM/Quiet Time religious teaching and indoctrination of Plaintiffs, and similarly situated students at Bogan High School, could not (and would not) have occurred but for the University of Chicago study. As such, this Honorable Court should apply the same standard as set forth in the *Brown* Court's ruling and in denying Defendants' Motion to Dismiss and find that the University's actions, in coordination with the Board and DLF, were the *moving force* behind the deprivation of Plaintiffs' Section 1983 Constitutional rights and their claimed injuries.

B. **The Complaints Adequately Allege State Action by DLF and the University**

1. **State-Action Issue is Decided on a Case-By-Case Basis**

Additionally, Defendants claim that DLF and the University did not engage in state action due to their assertion that the contracts are not sufficient to constitute state action and that the contracts between the defendants specify that the Defendant Board had "final authority" to authorize Quiet Time. *See* Dkt. 29 at 17. One of the cases that Defendants cite in support of this argument is *Vickery v. Jones*, 100 F. 3d 1334, 1345 (7th Cir. 1996) However, a more recent Seventh Circuit ruling than the *Vickery* ruling contradicts Defendants' interpretation of the case law that

has interpreted state action by private actors.

In *Tarpley v. Keistler, Jr., et al.*, 188 F. 3d 788, 793 (7th Cir., 1999), the Seventh Circuit noted that "To the extent that Keistler reads some language in *Vickery* to preclude a plaintiff from pursuing a §1983 claim against a private party absent evidence that the private party had the actual legal authority to take the action which caused the injury, he is incorrect.  Such an approach would make one factual consideration determinative.  But, to repeat, the Supreme Court has emphasized repeatedly that courts must decide the state-action issue on a case-by-case basis considering *all* of the circumstances."  According to the *Tarpley* Court, the plaintiff had presented some evidence to show that the state had simply rubber-stamped Defendant Keistler's recommendations of one candidate only (according to plaintiff based on party affiliation), in various meetings that Keistler had with state employees and with representatives in the Governor's office, and that evidence transformed defendants into state action and made Defendant Keistler a state actor for purposes of §1983.  *Id.*  The Seventh Circuit held that it would have been inclined to reverse the district court's granting of summary judgment if the alleged conspiracy was the only relevant consideration in the case.  *Id.*, at 794.

Like the defendant in *Tarpley*, Defendants DLF and the University enabled and endorsed Defendant Board's choice to implement TM and the "Quiet Time" program at Bogan by having various meetings in which TM training was required before implementation of the program for Bogan students.  Defendant DLF worked in conjunction with the Defendant University to persuade the Defendant Board to implement TM and "Quiet Time" at Bogan.  Once implemented, the Defendants continued to ensure that the programs were enforced through the various incentives offered to Plaintiffs and similarly situated students.  As such, Defendants DLF and the University were made state actors for purposes of §1983.

10

### 2. **Defendants DLF and University Were Acting Under Color of Law**

Throughout their brief, Defendants deny they were acting together to violate Plaintiffs'

rights. Plaintiffs agree with these "color of law" formulations set forth in Defendants' brief:

1. A *Monell* claim is supported through an express policy that, when enforced, causes
   an institutional violation.  (*See* Dkt. 29 at 10);

2. When, "the state has cloaked the private entity with some degree of state
   authority, usually through delegation of a public function as part of a…
   contractual or other agency relationship." (*See* Dkt. 29 at 15);

3. "Public and private actors must share a 'common, unconstitutional goal."
   (*See* Dkt. 29, p. 17); and

4. "Providing aid or encouragement to a state actor does not amount to a
   conspiracy," and "nor does merely 'working together.'" (*See* Dkt. 29 at 17)

However, Defendants also argue that the second element necessary to establish joint

liability—constitutional deprivation—is lacking.  In order to support that conclusion, Defendants

add "intent language" to the law! Viz:  1)  "*intentionally*… deprived." (*See* Dkt. 29 at 9);  2)

"*express* policy" (*See* Dkt. 29 at 10); 3)  "Defendants' conduct was a *deliberate* 'moving force.'"

(*See* Dkt. 29 at 11); and 4)  "Plaintiff's fail to plead *willfulness* [not] *intentionally* implemented."

(*See* Dkt. 29 at 18).  Plaintiffs disagree with Defendants' "rewrite" of the legal standard.

In the First Amendment context for §1983 suits, the burden is not on the

Plaintiff to prove that the Defendant "knew or should have known" he was violating the

Plaintiff's constitutional rights or that the Defendant had malicious intent. *Id*. at *Janus v. Am.*

*Fed'n of State, Cnty. & Mun. Emps., Council 31; AFL-CIO*, 942 F. 3d 352, 363-64 (7th Cir.

2019).  Rather, the Defendant may offer as a defense, that they acted in good faith. *Id.* at 366.  A

"good faith" defense may shield a Defendant from liability for money damages.  *Id*. at 366-67.

However, this is a difficult standard for the Defense to meet as they must prove that they acted in

reliance on established law.  *Id*.  at 366.

In *Janus*, the defendant labor Union used fees given by non-union members which was later declared to be an unconstitutional deprivation of the non-union member's free speech. *Id.* at 365-367. The defendant escaped liability because they proved they relied on existing law: *Abood v. Detroit Bd. of Ed.,* 431 U.S. 209 (1977) which the Supreme Court reversed in 2018 (prior to the Seventh Circuit *Janus* ruling). The Seventh Circuit then held that the Union could in good faith have relied on *Abood* until the Supreme Court actually reversed it. Although the Seventh Circuit allowed a "good faith" defense under these particular facts, its opinion concluded "…we emphasize again that the good faith defense to Section 1983 liability is narrow." *Id*. at 367. Unlike the defendant in Janus, no Defendant (not the Board, not DLF, not the University, not even their mother) in this case have submitted the slightest evidence that the Supreme Court, the Seventh Circuit, or any court anywhere has ruled that Transcendental Meditation is not a religion. A "good faith reliance" path does not exist. The *Malnak v. Yogi* case simply reinforces that Defendants could not have relied on legal precedent to justify their wrongful acts. *See Malnak et al. v. Yogi, et al.,* 592 F. 2d 197 (3rd Cir. 1979)

Defendants cite the case of *Vickery v. Jones* (100 F. 2d 1334, 1345 (7th Cir. 1996) in support of their argument that DLF and the University did not engage in state action because the Board retained *conditional* authority to eliminate the TM and Quiet Time program. Although the Board did have *conditional* authority-on paper-to cancel Quiet Time, it did not exercise that authority. For four years, it cloaked DLF and the University of Chicago with its authority, classrooms, scheduling daily meditation, allowing certified TM instructors access to minors, and facilitating private, illegal pujas. The University and Board cooperated to foist a highly intrusive Quiet Time Study-Student Health Form (hereinafter referred to in this brief as "Health Questionnaire") on underage students (eg. questions related to students' weight, pubic hair, body development

12

comparisons with other students, menstruation, breast size, etc.), obviously to benefit the University study. (*See* attached Ex. 2) So even if the Board had conditional authority, the record shows the University, with its control of the money or Lynch by furnishing the TM certified instructors (and apparently concealing *Malnak* from the other defendants) "called the shots" on crucial aspects of the deprivation of the Establishment and Free Exercise rights of the minor children (and their right to parental protection). Any one of the Defendants could have brought the Quiet Time program down by not renewing or terminating their contracts.

The facts in the cases cited by Defendants in support of their allegation that the Complaints fail to allege state action by DLF and the University are distinguishable from the facts in the present case. In one of the cases, the Seventh Circuit affirmed the District Court's ruling granting defendant labor union's Motion to Dismiss in a case where plaintiff Chicago police officers sued the union and its parent organization for violations of their First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 when they were expelled from the labor union as the Seventh Circuit held that the state does not govern the union's internal affairs. *Hallinan et al. v. Fraternal Order of Police of Chicago Lodge No. 7, et al.,* 570 F. 3d 811 (7th Cir., 2009). Further, the Hallinan Court held that "A state normally can be held responsible for private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the (government)." *Id.,* citing *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). In the second case, the Seventh Circuit held that plaintiff failed to allege a conspiracy because he only alleged that he was seized and unlawfully harassed by federal Naval police officers and he failed to allege an agreement between the federal officers and state officials who ultimately charged plaintiff even though they were not present during the incident. *Case v. Milewski*, 327 F. 3d 564, 566-68 (7th Cir. 2003)

In contrast to the *Hallinan* and *Case* rulings, courts have denied a Motion to Dismiss where there are sufficient allegations that a private actor was acting under color of state law. For example, in *McDorman et al. v. Smith, et al.,* 437 F. Supp. 2d 768, 773 (N.D. Ill., June 14, 2006), the court denied defendant off-duty policeman's Motion to Dismiss on the allegation that defendant was acting under color of state law. While the *McDorman* Court noted that although plaintiffs did not explain how the defendant off-duty policeman "was acting under the color of state law at the time of the accident, when he was off-duty, not in uniform, and driving a non-police vehicle. This argument, however, is premature on a motion to dismiss." *Id.* The Seventh Circuit ruled there is no requirement in federal suits of pleading facts or elements of a claim with the exception that the plaintiff must allege "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." Fed. R. Civ. P. 9, *Higgs v. Carver*, 286 F. 3d 437, 439 (7th Circ. 2002). The Seventh Circuit also held that "it is enough in pleading a conspiracy to merely indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F. 3d 1005, 1007 (7th Cir. 2002)

While Plaintiffs in this case acknowledge that the DLF and the University of Chicago are private entities, they also allege that "all defendants acting in concert were acting under color of law during the time periods relevant to this action." *See Green* Compl., Para. 15; *Hudgins* Compl., Para. 15. Regarding the University, Plaintiffs allege in Paragraph 14 of their respective Complaints that the University collaborated with the Board and DLF to plan and conduct a research project to implement the "Quiet Time" program that had the direct effect of violating Plaintiffs' constitutional rights and that of other students. See *Green* Compl., Para. 14, *Hudgins* Compl., Para. 14.

As for DLF, Plaintiffs allege in their respective Complaints the process in which DLF and the Board set forth each parties' obligations in their Memorandum of Understanding in implementing the Quiet Time program that all three each signed on June 15, 2017. *See Green* Compl., Para. 103, Exs. 17 and 18; *Hudgins* Compl., Para. 113, Exs. S and T. Additionally, DLF and the Board had various communications confirming they had been involved in a partnership together for implementation of the Quiet Time program and that the Board was willing to continue that partnership if DLF removed the ceremony component of the Quiet Time program. See *Green* Compl., Para. 100, Ex. 14; *Hudgins* Compl., Para. 110, Ex. P, and Para. 11, Ex. Q.

### 3. Plaintiffs Have Adequately Plead Willfulness

As shown above, alleging intentional deprivation of constitutional rights is not necessary. But it is sufficient! Defendants' argument that Plaintiffs have advanced a conspiracy theory based on negligence is not correct based on the facts. *See* Dkt. 29 at 18. In fact, the allegations in Plaintiffs' Complaints identify specific actions by each Defendant that go well beyond negligent behavior. For example, Plaintiffs have alleged in their Complaints that DLF created the "Quiet Time" program as a vehicle to enable teaching of TM in CPS schools despite knowing of the religious elements of TM, and that DLF and the University worked together to jointly propose the Quiet Time program to the Board. *See Green* Compl., Paras. 18, 19, 23; *Hudgins* Compl., Paras. 20, 21. Plaintiffs also allege that DLF contracted exclusively with TM instructors (who were certified to teach TM by the Maharishi Foundation, USA, an organization founded by Maharishi Yogi) to lead "puja" initiation ceremonies into TM at CPS schools, including Bogan. See *Green* Compl., Para. 32; *Hudgins* Compl., Para. 34.

During these "puja" initiation ceremonies, Plaintiffs allege that CPS students were regularly asked to place items before the image of Guru Dev or kneel before that image while

being required to be present as the TM instructor chanted in Sanskrit words with rehearsed movements, and that the Sanskrit words chanted by the TM instructor during the "Puja" initiation ceremony contained statements recognizing the power possessed by various Hindu deities. *See Green* Compl., Paras. 36, 40, 42; *Hudgins* Compl., Paras. 38, 42, 44.

Not only did these TM instructors (who had a contract with DLF) carry out the intentions of all three Defendants by leading the "Puja" initiation ceremonies, they also instructed CPS students, including Plaintiffs, to not share their mantras with anyone else. Plaintiff Kaya Hudgins testified that while she was a student she researched her and her classmates' mantras and learned they were "actually the names of Hindu gods." *See Green* Compl., Paras. 57, 60, 63, Ex. 6; *Hudgins* Compl., Paras. 59, 62, 63. Plaintiffs also allege that they repeatedly pressured, threatened, or reprimanded noncompliant students by sending them to the Dean's office when they complained of the religious aspects of the "Quiet Time" and TM program. *See Green* Compl., Para. 132; *Hudgins* Compl., Paras. 97, 146. The "Master Services Agreement" executed by the University in 2015 with the Board required the University to "rigorously evaluate" all CPS students involved in its research project related to Quiet Time. *See Green* Compl., Paras. 14, 120, Ex. 4; *Hudgins* Compl., Paras. 14, and 133, Ex. L. As Plaintiffs allege in their respective Complaints, it was the University that approached the Board with the proposal to implement the "Quiet Time" program within CPS schools, but the University also worked collaboratively with the Board and DLF (with a financial incentive) to establish the parameters for and the implementation of the "Quiet Time" program within CPS schools even though the University knew or should have known they would be violating the First Amendment rights of vulnerable minor students and parents of those children. *See Green* Compl., Paras. 23, 24, 27; *Hudgins* Compl., Paras. 23, 24, 27. As part of their vetting process in this "rigorous evaluation" of the Quiet Time program, Plaintiffs allege the University

knew or should have known of the religious essence of TM and the Quiet Time program before they approached CPS with its proposed implementation of the program. *See Green* Compl., Paras. 23, 24; *Hudgins* Compl., Paras. 23, 24. If the University had not vouched for TM to CPS, the "Quiet Time" program would not have existed at Bogan. Of course, the University would not have been paid if it had advised CPS that the Quiet Time program was illegal and religious. *See Green* Compl., Para. 121.b; *Hudgins* Compl., Para. 134.b.

Plaintiffs also alleged in their Complaints that Defendants violated the rights of the CPS children and their parents when they knew (or should have known) that TM was religious in nature and by failing to inform the CPS children and their parents (either in writing or verbally) that TM had been adjudicated to be religious in the *Malnak* trial court or Court of Appeals decisions and that it had been removed from all public schools in New Jersey. *See Green* Compl., Para. 4; *Hudgins* Compl., Paras. 4, 130, 132: i.e.: a deliberate concealment and deception.

The University and DLF's participation in the TM and "Quiet Time" program went well beyond an allegation that "they knew each other", as alleged by Defendants. *See* Dkt. 29 at 17. Based on the aforementioned case law related to sufficiency of alleging state action under "color of law" by a private actor, Plaintiffs' allegations in their respective Complaints have described the parties (the Board, DLF, and the University), and DLF and the University's joint participation in the constitutional deprivation against Plaintiff and other students, and approximate date of injury (Bogan's partnering with DLF for the 2017-2018 school year for a meditation-based program called "Quiet Time.") *See Hudgins* Compl. Para. 108, Ex. N, and Para.153; *Green* Compl. Para. 98, Ex. 12, and Para. 139. Thus, Defendants' Motion to Dismiss the Hudgins and Green Complaints must be denied.

17

C. __The Case Law Does Not Limit Plaintiffs' Legal Remedies to Only Nominal Damages__

    1. __The Evidence Supports an Award of Compensatory Damages for Kaya Hudgins__

Although Defendants' assert that Plaintiff Kaya Hudgins has not plead sufficient facts to support compensatory damages under her § 1983 claims, the evidence demonstrates an opposite conclusion. Dkt. 29 at 19. In Kaya Hudgins' deposition, she testified that while she was practicing TM, it felt like she was in a trance and that she did not have control. *See Hudgins'* Complaint, Ex. G, 183: 7-14, and 48:8-18. Moreover, Kaya testified that "it wasn't until she rang the bell that kind of like made me snap back." *See Hudgins'* Complaint, Ex. G, 48:8-18. Additionally, Kaya Hudgins testified that immediately after the TM meditation she experienced a heavy deep sleep that lasted all day. (See *Hudgins'* Complaint, Ex. G, 184: 5-11) Furthermore, she informed her counselor at the time she was receiving counseling for depression that she was required to go through the TM program at Bogan. See *Hudgins'* Compl., Ex. G, 187: 16-24. Kaya Hudgins also stated in her Declarations that she had been sent to the dean's office when she questioned why she had to participate in the Quiet Time program, and she was specifically told that not participating in the TM program would negatively affect her grades. See *Hudgins'* Compl., Ex. K, Paras. 19, 20. At the time Kaya Hudgins went through TM, she was a practicing Muslim and expected to pray five times daily. See *Hudgins'* Compl., Ex. K, Para. 24. Yet, while she was required to take time away from class to participate in TM, Kaya was not allowed to take time away from class for her five daily Muslim prayers. See *Hudgins'* Compl., Ex. K, Para. 24.

This Court's previous ruling on May 21, 2021 addressed the same arguments now brought up in Defs.' Mem. Supp. Comb. Mot. Dismiss. In *Separation of Hinduism From Our Schools, et al. v. Chicago Public Schools, City of School District #299, et al*. *v. Chicago Public Schools, et*

*al.,* this Court disagreed with the Board's argument that Amontae Williams could not establish standing to assert a claim for violation of the Establishment Clause because he has not alleged a concrete injury, and the Court ruled that the Board was wrong in their assertion that a "psychological injury is insufficient to constitute an injury in fact under the Establishment Clause." *See* Dkt. 65 at 11, 2021 WL 2036536. In its ruling, this Court quoted the Seventh Circuit Court of Appeals ruling that held "The concept of a concrete injury is particularly elusive in the Establishment Clause context because the Establishment Clause is primarily aimed at protecting noneconomic interests of a spiritual, as opposed to a physical or pecuniary, nature." *See* Dkt. 65 at 11, citing *Freedom from Religion Found., Inc. v. Lew*, 773 F. 3d 815, 819 (7th Cir. 2014) (alterations made) (internal quotation marks omitted). Moreover, this Court held that even if Amontae Williams' injury could be characterized as only psychological, his injury would have been produced because of his direct, allegedly coerced participation in Quiet Time. *See* Dkt. 65 at 11, 2021 WL 2036536. Plaintiff Amontae Williams claimed that he was exposed to negative spiritual influences when he was meditating as part of the Quiet Time program and that he suffered direct, personal injury through the coerced participation in his claimed religious ceremonies. This Court went on to rule that "His allegations are therefore far more substantial and far more personal than just a "feeling of alienation" due to government action or "a desire to have public officials comply with [his view of] the Constitution." *See* Dkt. 65 at 13, 2021 WL 2036536, citing *Freedom From Religion Found, Inc. v. Obama*, 641 F. 3d 803, 807-8 (7th Cir., 2011).

Likewise, Kaya Hudgins' allegations are substantial and deserving of an award of compensatory damages given her coerced participation in TM and the "Quiet Time" program at the same time as the refusal to allow Kaya Hudgins to take time away from class for her daily required five Muslim prayers.

### 2. **Compensatory Damages Are Adequately Plead in Mariyah Greens' Complaint**

Similar to Plaintiff Amontae Williams' injuries, even if Plaintiff Mariyah Green's injuries were characterized as psychological in nature, her injuries are alleged to be as a result of her direct, allegedly coerced participation in Quiet Time.  As a basketball player at Bogan High School, Mariyah Green knew that it was important for her to have good grades in order to stay on the team. *See Green* Decl,, Para. 82.  When she was told that her cooperation and participation in the twice daily "Quiet Time" would count towards her grades, Mariyah felt like she was forced to participate in the program, and forced to lie about a "knee injury" (even though lying was against her religious convictions), so that she would not be kicked off the basketball team for bad grades. *See Green* Decl,, Para. 82.  When Bogan teachers approached Mariyah to remind her to meditate, she would tell them that the "Quiet Time" program was not normal and asked them why they were not learning.   Mariyah felt alone and angry when her opinions about the "Quiet Time" program were not respected, and she was not given a choice whether she could participate in the program or not. *See Green* Decl., Para. 83.  Thus, Mariyah Green is also entitled to an award of compensatory damages due to the psychological damages she sustained as a result of her direct and coerced participation in TM and Quiet Time.

### III.     **Plaintiffs' State-Law Claims Are Not Time-Barred**

#### A.     **Plaintiffs' IRFRA and Illinois Common Law Claims— (Subject to 1-year statute of limitations)**

As this Court has previously concluded in the *Amontae Williams v. Board of Education of the City of Chicago, et al*. case, the Board may be sued under IRFRA claims, and the Defendants' argument that the Tort Immunity Act acts to shield the defendants from liability under the one-year statute of limitations is unfounded.   (Dkt. 65 at 32, 42)  The one-year statute

of limitations in the Tort Immunity Act simply does not apply in these cases due to a §1983 allegations contained in Plaintiffs' respective Complaints. According to Plaintiffs, implementation of the Quiet Time program by the Board resulted in continuous violations. *See Green* Compl. Para. 132, 134, 135; *Hudgins* Compl., Para. 146, 148, 149. For allegations of a tort involving a continuing or repeated injury, "the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 199 Ill. 2d 325 at 345 (2002). Therefore, Plaintiff's IRFRA and common law claims are not barred since Plaintiffs' respective Complaints include allegations of Defendants' continuous violation of Plaintiffs' (and similarly situated students') §1983 constitutional rights,

## B.  Plaintiffs' State Law Claims Are Timely Filed

The Defendants are not correct when they allege that Plaintiffs' state law claims are untimely. They contend the case law supports Defendants' position that if there is a conflict between the time periods between the Tort Immunity Act and the Minor Tolling Statute that the courts have adopted a compromise where the time-period to file suit against a governmental entity is one year after the minor's 18th birthday. *See* Dkt. 29 at 22. Actually, the facts in the case cited by Defendants in support of their position are distinguishable from the facts in the present case. For instance, the facts in the *Ferguson* case indicate that in a medical malpractice claim brought against Fantas Clinic of Cook County Hospital that the plaintiff (decedent's wife) filed an Amended Complaint to name their minor daughter as an heir to the wrongful death count of the malpractice complaint, and the Illinois Supreme Court affirmed the Appellate Court's ruling that one-year limitations period of the Tort Immunity Act applied to all medical malpractice claims brought against local governmental entities and their employees, including

21

those claims brought on behalf of minors. *Ferguson v. McKenzie*, 202 Ill. 2d 304, 307, 780 N.E.2d 660, 662 (2001)  So *Ferguson* did not involve a minor suing after reaching majority.

Defendants also cite *Goza v. Rainmaker Campground, Inc*., 2014 WL 5543989, at *2 (C.D. Ill. Nov. 3, 2014) in support of their argument that the two-year period is shortened to one-year because the plaintiff minor was filing a negligence suit against a governmental entity.  In fact, the *Goza* Court denied the defendant's Motion to Dismiss where the defendant had claimed the minor plaintiff had not timely filed his negligence action within one-year based on the Tort Immunity Act.  *Id*, at 7.  The Court noted that following the accident the plaintiff had suffered from severe depression, anxiety and short term memory loss that contributed to the plaintiff not filing the negligence action within a year after the incident, and held that it would be premature to dismiss the minor plaintiff's claim for not filing his negligence suit within a year against the defendant the City of Litchfield because of the severe injuries the plaintiff sustained after he dove into shallow water from a dock at the defendant campground.  *Id.*  It is of note that neither the *Ferguson* or *Goza* Courts made their ruling based on any federal claims.

In contrast to the cases cited by Defendants in support of their allegations that Plaintiffs' state law claims are time-barred, the Northern District of Illinois specifically rejected the defendant DuPage County School District 45's claim that the one-year statute of limitations under the Tort Immunity Act barred the plaintiff Tia Lane's racial discrimination action on behalf of her minor son.  *Lane v. Dupage Cnty. Sch. Dist. 45,* No. 13-CV-5386, 2014 WL 518445, at *11 (N.D. Ill. Feb. 10, 2014)  Additionally, the *Lane* Court agreed with plaintiff's argument that there was a long line of cases that have held the one-year statute of limitations period in 8-101 of the Tort Immunity Act does not apply to claims brought by or on behalf of minors.  *Id*.  *Lane* was decided in 2014 subsequent to the *Ferguson* case cited by Defendants.

In sum, Plaintiffs' state law claims are timely, not only due to the *Lane* Court's ruling, but also based on Plaintiffs' prior argument that the one-year statute of limitations in the Tort Immunity Act does not apply in Plaintiff's cases due to their respective allegations of Defendants' continuous religious teaching and indoctrination of Plaintiffs, and similarly situated students, in violation of their §1983 rights under the Constitution.

## IV.   The Complaints State Valid IRFRA Claims

### A.   Damages Do Exist for an IRFA Remedy Given the "Appropriate Relief" Language Contained in *775 ILCS 35/20*

The actual wording of IRFA does not preclude a damages remedy, as Defendants have wrongly implied.  *See* Dkt. 29 at 23.  A prevailing plaintiff is entitled to "appropriate relief" and may also recover attorney's fees and costs.  *775 ILCS 35/20.* See *Banks et al. v. Dougherty, et al.,* 2010 WL 747870 (N.D., Illinois, Eastern Division, 2010).  The actual wording of IRFRA allowing for "appropriate relief" is not specifically defined in the statute and should be construed to parallel federal law to include actual and nominal damages.  In their citation to the U.S. Supreme Court's ruling in *Sossamon*, Defendants admit that what constitutes "appropriate relief" sometimes authorizes damages.  *See* Dkt. 29 at 23, citing *Sossamon v. Texas*, 563 U.S. 277, 286-88 (2011).

Yet, the other cases that Defendants cite in support of their argument that IRFRA does not expressly authorize damages against Illinois local governments do not even discuss IRFA. *See* Dkt. 29 at 24.  For example, the *Kole* Court held that although a municipality cannot be liable under § 1983 under a *respondeat superior* theory, that municipality may be liable "if its officers acted pursuant to (1) an official policy; (2) a practice or custom that although not officially authorized, was widespread and well settled; or (3) instructions from a city official with final policy-making authority."  *Kole v. Village of Norridge*, 941 F. Supp. 2d 933, 962

(N.D. Ill. April 19, 2013). Likewise, the case of *Klein v. Village of Mettawa* case cited by Defendants makes no mention of IRFRA whatsoever. The *Klein* Court dismissed the Equal Protection claim against the Village of Mettawa as the court held that Mettawa's decision to pay the tax rebate only to property owners who qualified for the homestead exemption, and who lived in a home on the property during the relevant time period, had a rational basis. *Klein v. Vill. of Mettawa*, No. 13 C 5106, 2014 WL 1661631, at *5 (N.D. Ill. Apr. 25, 2014) Finally, at no point does the ruling in *Teale* expressly discuss IRFRA. One of the basis for the Illinois Supreme Court's affirming the lower court's dismissal of the case was that the "Age Discrimination Act" does not expressly authorize a civil action for damages. *Teale v. Sears, Roebuck and Co*., 66 Ill. 2d 1, 4, 7 (1976) In sum, Defendants have failed to cite to even one case that does not authorize damages against Illinois local governments under IRFRA.

Therefore, Plaintiffs' Complaints have adequately plead IRFRA and they are entitled to seek damages based on the aforementioned reference to the express language contained in IRFRA that a prevailing plaintiff is entitled to "appropriate relief". *775 ILCS 35/20.* Whether damages are "appropriate" in a given case is thus best determined by the trier of fact.

## B. IRFRA Does Permit Claims Against DLF and the University

The facts in the cases cited by Defendants in support of their argument that IRFRA does not permit claims against non-government entities are distinguishable from the facts in the present case. *See* Dkt. 29 at 24. The *Banks* Court held that in a case brought by plaintiff against individual employees of a mental health facility operated by the state for alleged violations of a violated IRFRA when they allegedly substantially burdened Plaintiffs' right to practice their faith by repeated requests for Jumu'ah services, that when a state employee is accused of violating a statute that applies to the employee only by virtue of his status as state employee then sovereign

24

immunity under the Eleventh Amendment will bar an individual capacity suit. *Banks v. Dougherty,* No. 07-CV-5654, 2010 WL 747870, at *11 (N.D. Ill. Feb. 26, 2010). However, Plaintiffs have not filed a case against individual employees of Defendants, but rather have filed their Complaints against the Board as a governmental entity and have also alleged the Defendants were equally liable as they were acting under "color of law," as previously argued relative to §1983.

Likewise, the *Listecki* Court cited by Defendants does not even reference IRFRA in its ruling. The facts in the *Listecki* case involved plaintiff seeking a declaration that the First Amendment and/or RFRA bar the application of the avoidance and turnover provisions of the Code to the Funds that the Archdiocese had targeted for the operation of and maintenance of eight Catholic cemeteries and seven mausoleums in the Milwaukee area since 1857 as the Archdiocese had claimed it had aside money for decades to provide perpetual care for those cemeteries in accordance with Canon Law. *Id*. at 734, 736. The Seventh Circuit held that RFRA (case did not even mention IRFRA) did not apply as the Defendant Official Committee of Unsecured Creditors was not the government and was also not acting under "color of law" as there was not a close "nexus" between the committee and the government. *Listecki v. Official Committee of Unsecured Creditors,* 780 F. 3d 731, 737 (7th Cir. 2015)

However, in this case, there was not only a "nexus" between the Board and DLF and the University in the implementation and enforcement of the TM and Quiet Time programs at Bogan but also an ongoing agreement to coerce students into TM. Unlike the facts in the two cases cited by Defendants, the allegations in Plaintiffs' Complaints clearly contain allegations that all Defendants were acting under "color of law" for the constitutional deprivations of Plaintiffs religious freedoms. *See Green* Compl., Para. 15; *Hudgins* Compl., Para. 15.

25

### C. *Monell* Does Not Bar IRFRA Claims

The Illinois Religious Freedom Restoration Act ("IRFRA") provides that the "[g]overnment should not substantially burden the exercise of religion without compelling justification." *775 ILCS 35/10(a)(3).*  Defendants state a conclusory allegation that *Monell* bars damages against all Defendants without citing any authority in support of their argument.

In *Monell,* the U.S. Supreme Court held that "Although the touchstone of the of §1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, municipalities may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels."  *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978).  In the *Wyatt* case, the U.S. Supreme Court has held that the purpose of §1983 is "to 'deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992)  Likewise, the Seventh Circuit held that "In order to sufficiently allege a §1983 claim against a municipality, a plaintiff must allege:  (1)  the (municipality) had an express policy that, when enforced, causes a constitutional deprivation….or (3)  plaintiff's constitutional injury  was  caused  by  a  person  with  final policymaking authority."  *McCormick v. City of Chicago*, 230 F. 3d 319, 324 (7th Circ. 2000)  Additionally, a plaintiff may show the existence of a policy or other governmental custom on the part of the government that not only causes but is the 'moving force' behind the deprivation of constitutional rights.  *Teesdale v. City of Chicago*, 690 F. 3d 829m, 233 (7th Cir. 2012)

Applying the aforementioned case law related to this case, Plaintiffs have sufficiently plead in Count II of their respective Complaints, that Defendants have substantially burdened the

religious exercise rights of CPS students, and the parents and legal guardians of CPS students. The Quiet Time/TM program itself was the "express policy." *See Hudgins'* Compl., Paras. 157-158, *Green* Compl., Paras. 142-143 )   As such, Defendants' claim that Plaintiffs' IRFRA claim is barred by *Monell* is without merit and should be disregarded.

**V.     Plaintiffs' Complaints Contain Sufficient Claims for Common Law And Constitutional Law Duties**

**A.     Plaintiffs Are Third-Party Contract and Common Law Beneficiaries**

Plaintiffs have alleged that students (not teachers, not the Board, not DLF, not the University) are the intended beneficiaries of the Board's contracts with the other defendants. Indeed, all that the Board does is intended to benefit the children of Chicago.  As minors, high school students are not able to negotiate specific protections from the ill-conceived plans of outsiders (such as DLF and the University) which may have agendas tainted by self-interest rather than the best interests of the students.  They must be dependent on the Board (and its principals, lawyers, contracts, security guards, and teachers) for protection from violence, discrimination, and constitutional deprivations—at least during school hours on school premises.  Thus, by law and social consensus, CPS is a fiduciary for its students.

This court has ruled that the absence of an explicit contract provision declaring students as intended beneficiaries under any Board contract precludes their assertion of third-party beneficiary status under Illinois law and particular contracts, and Plaintiffs agree that Defendants have appropriately cited the *Carlson v. Rehab. Inst*. case.  See Dkt. 29 at 26, citing *Carlson v. Rehab. Inst. of Chi*., 50 N.E. 3d 1250, 1256 (11. App. Ct. 2016).  However, foregoing paragraph overview of the Board's fiduciary responsibility provides the Court a just legal pathway to recognize an exception to the black letter Illinois rule because of the unquestionable duty of schools to protect

27

their students.

Alternatively, the Court may, more directly—irrespective of any contract—simply rule that Plaintiffs have a common law cause of action against the Board for failure to protect them whether it be called "common law," "fiduciary," "*in loco parentis*", or any other legal doctrine. The simple truth is the Board allowed the Plaintiffs to be abused and that abuse was wrong even if the schools had been in Japan, Saudi Arabia, or anywhere beyond the shelter of the First Amendment. The Board and the other defendants seem to be conducting this litigation as a "cover-up" to avoid accountability rather than to compensate students for the damages inflicted. Yet, they have never clearly acknowledged that the program was wrongfully imposed on 2-3,000 students and their parents.

Nevertheless, the University, the Board, and DLF created a deceptive program that proved harmful to students and parents. The pathway to their liability is brightly lit by common sense bulbs but it may not be necessary for the Court to reach the common law argument of if it rules that §1983 affords Plaintiffs the same or better relief.

**B.** **Plaintiffs Have A Right of Action Under the Illinois Constitution**

Contrary to Defendants' assertion, Plaintiffs have adequately alleged damages under the Illinois Constitution. *See* Dkt. 29 at 27. The plain language of the Bill of Rights in Article 1, § 3 of the Illinois Constitution provides:

### § 3. Religious Freedom

"The free exercise and enjoyment of religious profession and worship, without discrimination, shall forever be guaranteed, and no person shall be denied any civil or political right, privilege or capacity, on account of his religious opinions; but the liberty of conscience hereby secured shall not be construed to dispense with oaths or affirmations, excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of the State. No person shall be required to attend or support any

ministry or place of worship against his consent, nor shall any preference be given by law to any religious denomination or mode of worship."

Moreover, the Bill of Rights to the Illinois Constitution § 12 states as follows:

### § 12. Right to Remedy and Justice

"Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly."

§ 12 is not "excess verbiage." The Framers placed it squarely in the Bill of Rights to allow "persons" to obtain relief. As such, Plaintiffs each have a right to remedy and justice under the Illinois Constitution to seek redress for the damages and wrongs they sustained by Defendants.

### CONCLUSION

For the reasons stated above, Plaintiffs submit their Response Brief to Defendants' Memorandum in Support of their Joint Motion to Dismiss, and request this Honorable Court deny Defendants' Joint Motion to Dismiss, and grant any and all further just relief.

Dated: April 24, 2023                    Respectfully Submitted,

                                         **KAYA HUDGINS,**
                                         **MARIYAH GREEN,**
                                         **SHAVON GIBSON**

                                         By: */s/ Judith A. Kott*
                                             JUDITH A. KOTT

                                             */s/ John W. Mauck*
                                             JOHN W. MAUCK

John W. Mauck                            Sorin A. Leahu
Judith A. Kott                           **Leahu Law Group**
**MAUCK & BAKER, LLC**                   53 W. Jackson Blvd. Ste 1527
One N. LaSalle St., Ste 600              Chicago, IL 60604
Chicago, Illinois 60602                  847-529-7221
312-726-1243                             sleahu@leahulaw.com
jmauck@mauckbaker.com
jkott@mauckbaker.com

**Certificate of Service**

I, Judith A. Kott, certify that on April 24, 2023 a copy of the foregoing document was

served via CM/ECF on all counsel of record as listed below.

**Service List**

Elizabeth K. Barton / ekbarton@cps.edu
Kaitlin T. Salisbury / ktsalisbury@cps.edu
Christina Rosenberg / crosenberg@cps.edu
Board of Education of the City of Chicago
Law Department
1 N. Dearborn St., #900
Chicago, IL 60631
Counsel for Defendant, Board of Education of the City of Chicago

James J. Sipchen / jsipchen@pretzel-stouffer.com
Pretzel & Stouffer, Chartered
One S. Wacker, Suite 2500
Chicago, IL 60606
Counsel for Defendant, David Lynch Foundation

Mark L. Zaiger (*pro hac vice*) / mlz@shuttleworthlaw.com
Shuttleworth & Ingersoll, PLC
115 3rd Street SE, Suite 500
Cedar Rapids, Iowa 52401
Counsel for Defendant, David Lynch Foundation

Mark S. Mester / mark.mester@lw.com
Johanna Spellman / johanna.spellman@lw.com
Renatta Gorski / renatta.gorski@lw.com
Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Counsel for Defendant, The University of Chicago

Carolyn M. Homer (*pro hac vice*) / carolyn.homer@lw.com
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Counsel for Defendant, The University of Chicago

Sorin A. Leahu
**Leahu Law Group**
53 W. Jackson Blvd. #1527
Chicago, IL 60604
847-529-7221
sleahu@leahulaw.com

# Exhibit 1

| | |
|---|---|
| **Date:** | Wednesday, September 23 2015 11:12 PM |
| **Subject:** | David Lynch Documentary - Meditation, Creativity, Peace |
| **From:** | Julia Busch <julia@davidlynchfoundation.org > |
| **To:** | John Wolf <wolfj@uchicago.edu>; Lydia Jessup <ljessup@uchicago.edu>; Chelsea Hanlock <chanlock@uchicago.edu>; |
| **CC:** | 'Chris Busch' <chris@davidlynchfoundation.org>; |
| **Attachments:** | Meditation Screening Poster.pdf |

Hi John, Lydia and Chelsea,

We'd like to schedule a brief "check-in" and meditate together, answer any questions, etc. This is recommended a few weeks after completing the TM training. Would you all be available Saturday October 3rd?

Also, wanted to give you a heads up about the film screening of David Lynch's documentary about his 16 country tour in Europe a few years ago. It is a real art piece and a very interesting look at TM, from the artist's perspective. The film is being hosted by the School of the Art Institute of Chicago at 11:30 am on Saturday, Oct. 3rd.
We could do the TM check-in at the TM Center before or after the screening.

Let us know if this works.

Julia

UNIVERSITY_004349

# Exhibit 2

## Your Health and Wellbeing          ID#_____

Your health and sleep affects your stress levels. We need to know about this so we can take them into account when we analyze your data. We realize that many of the questions below will not be relevant to you, but we need to ask them of everybody. Please answer the following. Remember that you may skip any question you do not want to answer. All of your answers are confidential. **Thank you!**

## Introductory Questions

1. My birthday is:          _____ month          _____ day          _____ year

2. How far do you think you will go in school? Please choose one.
   - O   9-11 grade
   - O   Graduate from high school
   - O   Graduate from high school and complete a 2-year college degree
   - O   Graduate from high school and complete a 4-year college degree
   - O   Complete a Master's degree or teacher's credential
   - O   Complete a Ph.D., M.D., J.D., or other similar degree

## Health Questions

3. a. How often do you do *mild exercise* **per week***?* Examples include walking or anything where you are moving but your heart doesn't beat fast.

| Not at all | One time a week | Two times a week | Three or more times |
|:---:|:---:|:---:|:---:|
| ☐ | ☐ | ☐ | ☐ |

   b. What kinds of *mild exercise* do you do?

   _____

   _____

4. a. How often do you do *hard exercise* **per week**? Examples include running, playing sports, or anything where you breathe heavily and your heart beats fast.

| Not at all | One time a week | Two times a week | Three or more times |
|:---:|:---:|:---:|:---:|
| ☐ | ☐ | ☐ | ☐ |

   b. What kinds of *hard exercise* do you do?

   _____

UNIVERSITY_000107

**Quiet Time Study - Student Health Form - P. 2**

5. How often do you drink drinks with caffeine in them (like soda/Coke or energy drinks) per week?

| Not at all | One time a week | Two times a week | Three or more times |
|:---:|:---:|:---:|:---:|
| ❑ | ❑ | ❑ | ❑ |

6. Do you take any medicines for allergies or asthma?

| Not at all | Once per week or less | 2-4 times per week | 5 or more times per week |
|:---:|:---:|:---:|:---:|
| ❑ | ❑ | ❑ | ❑ |

7. Do you have any health problems?  Please tell us about them.

_____

_____

_____

8. Please list all the medications (medicines, including pills, patches, injections, medical creams or ointments) that you are taking right now.  If you can't remember the name of the medicine, please list what the medicine is for.

_____

_____

_____

_____

9. a. On average, how many hours of sleep do you get per night? _____ (hours)

   b. I typically go to bed between the hours of _____ and _____.

   c. I typically get up between the hours of _____ and _____.

**Quiet Time Study - Student Health Form - P. 3**

d. How long (in minutes) does it usually take you to fall asleep? _____ minutes

e. About how many days per week do you wake feeling rested? (please circle):

1          2          3          4          5          6          7

10. During the <u>past month</u>, how often have you had trouble sleeping because you cannot get to sleep within thirty minutes?

| **Not at all** | **One time a week** | **Two times a week** | **Three or more times** |
|:---:|:---:|:---:|:---:|
| ❑ | ❑ | ❑ | ❑ |

11. During the <u>past month</u>, how often have you had trouble sleeping because you wake up in the middle of the night or the early morning?

| **Not at all** | **One time a week** | **Two times a week** | **Three or more times** |
|:---:|:---:|:---:|:---:|
| ❑ | ❑ | ❑ | ❑ |

11. During the <u>past month</u>, how often have you had trouble staying awake while eating meals, engaging in social activities or sitting in class?

| **Not at all** | **One time a week** | **Two times a week** | **Three or more times** |
|:---:|:---:|:---:|:---:|
| ❑ | ❑ | ❑ | ❑ |

12. During the <u>past month</u>, how would you rate your sleep quality overall?

| **Very Good** | **Okay** | **Pretty Bad** | **Very Bad** |
|:---:|:---:|:---:|:---:|
| ❑ | ❑ | ❑ | ❑ |

13. How tall are you? _____ ft. _____ in.

How much do you think you currently weigh? _____ lbs.

**Quiet Time Study - Student Health Form - P. 4**

14. Overall, would you say your health is (check one):

| Very Good | Above Average | Average | Below Average | Poor |
|:---:|:---:|:---:|:---:|:---:|
| ☐ | ☐ | ☐ | ☐ | ☐ |

15. Do you have any additional comments about your health or lifestyle?

_____

_____

*Females* – *Please continue on Page 4, then skip Page 5.*
*Males* – *Please continue on Page 5.*

UNIVERSITY_000110

## Physical Development Scale - Female

The following questions ask about the physical changes that have occurred or are still occurring to your body during adolescence. Circle only one answer for each question and fill in the blanks. Some of these questions are quite personal in nature; please skip any questions you do not wish to answer. Remember that your answers are entirely confidential.

1. Would you say that your growth in height:
   O has not yet begun to spurt ("spurt" means more growth than usual)
   O has barely started
   O is definitely underway
   O seems completed

2. And how about the growth of body hair ("body hair" means underarm and pubic hair)?
   Would you say that your body hair has:
   O not yet started growing
   O has barely started growing
   O is definitely underway
   O seems completed

3. Have you noticed any skin changes, especially pimples?
   O not yet started showing changes
   O have barely started showing changes
   O skin changes are definitely underway
   O skin changes seem completed

4. Have your breasts begun to grow?
   O not yet started growing
   O has barely started changing
   O breast growth is definitely underway
   O breast growth seems completed

5. Do you think your development is any earlier or later than most girls your age?
   O much earlier
   O somewhat earlier
   O about the same
   O somewhat later
   O much later

6. Do you have a monthly menstrual period?            No            Yes

   If "yes", how old were you when you first menstruated?  _____ years _____ months
   If "yes", how many days has it been since the beginning of your last menstrual period? _____ days
   If "no", please indicate the reason:
        ☐ Haven't had a period yet
        ☐ Currently Pregnant _____ months
        ☐ Other (please describe): _____

*Please continue on **Page 6**.*

## Physical Development Scale – Male

The following questions ask about the physical changes that have occurred or are still occurring to your body during adolescence. Circle only one answer for each question and fill in the blanks. Some of these questions are quite personal in nature; please skip any questions you do not wish to answer. Remember that your answers are entirely confidential.

1. Would you say that your growth in height:
   - O   has not yet begun to spurt ("spurt" means more growth than usual)
   - O   has barely started
   - O   is definitely underway
   - O   seems completed

2. And how about the growth of body hair ("body hair" means underarm and pubic hair)? Would you say that your body hair has:
   - O   not yet started growing
   - O   has barely started growing
   - O   is definitely underway
   - O   seems completed

3. Have you noticed any skin changes, especially pimples?
   - O   not yet started showing changes
   - O   have barely started showing changes
   - O   skin changes are definitely underway
   - O   skin changes seem completed

4. Have you noticed a deepening of your voice?
   - O   not yet started changing
   - O   has barely started changing
   - O   voice change is definitely underway
   - O   voice change seems completed

5. Have you begun to grow hair on your face?
   - O   not yet started growing hair
   - O   has barely started growing hair
   - O   facial hair growth is definitely underway
   - O   facial hair growth seems completed

6. Do you think your development is any earlier or later than most other boys your age?
   - O   much earlier
   - O   somewhat earlier
   - O   about the same
   - O   somewhat later
   - O   much later

*Please continue on Page 6.*

UNIVERSITY_000112

## Mood & Feelings Questions

This form is about how you might have been feeling or acting recently.  For each question, please circle how you have been feeling or acting **in the past two weeks**.

If a sentence was not true about you, fill in NOT TRUE.

If a sentence was only sometimes true, fill in SOMETIMES.

If a sentence was true about you most of the time, fill in TRUE.

| | *NOT  TRUE* | *SOMETIMES* | *TRUE* |
|---|---|---|---|
| 1.  I felt miserable or unhappy. | O | O | O |
| 2.  I didn't enjoy anything at all. | O | O | O |
| 3.  I felt so tired I just sat around and did nothing. | O | O | O |
| 4.  I was very restless. | O | O | O |
| 5.  I felt I was no good anymore. | O | O | O |
| 6.  I cried a lot. | O | O | O |
| 7.  I found it hard to think properly or concentrate. | O | O | O |
| 8.  I hated myself. | O | O | O |
| 9.  I was a bad person. | O | O | O |
| 10. I felt lonely. | O | O | O |
| 11. I thought nobody really loved me. | O | O | O |
| 12. I thought I could never be as good as other kids. | O | O | O |
| 13. I did everything wrong. | O | O | O |

## Your Health in the Past 4 Weeks

These questions are about how you may have been feeling over the PAST 4 WEEKS. Please select the appropriate number to indicate your answer to each question.

In the PAST 4 WEEKS, on how many days….

|  | No days | 1 to 3 days | 4 to 6 days | 7 to 14 days | 15 to 28 days |
|---|---|---|---|---|---|
| 1. Did you feel really sick? | O | O | O | O | O |
| 2. Did you wake up feeling tired? | O | O | O | O | O |
| 3. Did you tire easily or feel like you had no energy? | O | O | O | O | O |
| 4. Were you dizzy? | O | O | O | O | O |
| 5. Did you have wheezing or trouble breathing (when you weren't exercising)? | O | O | O | O | O |
| 12. Did you have a headache? | O | O | O | O | O |
| 13. Did you have a stomach ache? | O | O | O | O | O |
| 14. Did you have pain that really bothered you? | O | O | O | O | O |
| 15. Were you free of pain? | O | O | O | O | O |
| 16. Did you feel really healthy? | O | O | O | O | O |

**Thank You!!**

UNIVERSITY_000114