**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KAYA HUDGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 23 C 218 |
| | ) | |
| BOARD OF EDUCATION OF | ) | |
| THE CITY OF CHICAGO and THE | ) | |
| DAVID LYNCH FOUNDATION, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Plaintiff Kaya Hudgins is a former student of the Chicago Public Schools (CPS) system. She has sued the Board of Education of the City of Chicago and the David Lynch Foundation under 42 U.S.C. § 1983, alleging that implementation of the "Quiet Time" program in several CPS schools, including the high school she attended, violated the Establishment and Free Exercise Clauses of the federal Constitution. Hudgins has moved to certify the case as a class action under Federal Rule of Civil Procedures 23(b)(3). For the following reasons, the Court grants Hudgins's motion with regard to the Establishment Clause claim and denies it with regard to the Free Exercise claim.

### Background

The Court takes the following facts from its motion to dismiss order in this case, the first amended complaint, and the class certification briefing. A more detailed recounting of the allegations can be found in the Court's June 30, 2023 decision on the defendants' motion to dismiss. *See Hudgins v. Bd. of Educ. of City of Chicago*, No. 23

C 218, 2023 WL 4303004 (N.D. Ill. June 30, 2023).

The named plaintiff, Kaya Hudgins, attended Bogan Computer Technical High School in Chicago for her sophomore and junior years of high school—the 2018-19 and 2019-20 academic years. Bogan was one of eight CPS schools that implemented the Quiet Time program.

The Quiet Time program consisted of two fifteen-minute meditation sessions that occurred during each school day. During these sessions, students either participated in Transcendental Meditation or engaged in another quiet activity. Hudgins alleges that while the Quiet Time program and Transcendental Meditation were represented as non-religious, they had "hidden religious" elements. Compl. ¶ 73.

Students who participated in Transcendental Meditation were taught to meditate by certified Transcendental Meditation instructors hired by the David Lynch Foundation. As part of their meditation training, the instructors assigned each student a Sanskrit "mantra" to silently repeat while they meditated. Hudgins alleges that though they were told the mantras were "meaningless sounds," the words actually "honor or reference specific Hindu deities." *Id.* ¶¶ 51, 56. Hudgins alleges students were also required to complete a "Puja" initiation ceremony as a required part of learning Transcendental Meditation. The ceremonies were conducted by the certified instructors, who placed items around a picture of a former teacher of Transcendental Meditation, performed rehearsed movements, and chanted in Sanskrit. The chants included "statements recognizing the power possessed by various Hindu deities and invitations to those same Hindu deities to channel their powers through those in attendance." *Id.* ¶ 44. Students were told to keep the initiation ceremony and their mantras secret.

During Quiet Time, the meditation sessions were led by certified Transcendental Meditation instructors.  If a certified instructor was not available, CPS teachers would lead the sessions.  Students who did not learn or participate in Transcendental Meditation stayed in the same classroom as those who did, but they instead engaged in other quiet activities.

## Discussion

Hudgins has moved to certify a class consisting of "[a]ll students who participated the Quiet Time program in Chicago Public Schools during Chicago Public School's [sic] academic calendar for 2015-16, 2016-17, 2017-18, and 2018-19."  Pl.'s Mot. For Class Cert. at 1.  For the case to proceed as a class action, Hudgins must demonstrate "that the proposed class meets the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and at least one of the branches of Rule 23(b)."  *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 858-59 (7th Cir. 2017).  Hudgins seeks certification only under Rule 23(b)(3), which requires showing "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Before turning to the substance of the class certification analysis, the Court addresses two preliminary matters.  First, Hudgins has included in her motion arguments that the University of Chicago was a "moving force" in the Quiet Time program, in hopes of establishing its "joint and several liability with the other Defendants."  Pl.'s Mot. For Class Cert. at 2.  After this motion was filed, and at the

3

plaintiff's request for clarification, the Court clarified that it had previously "dismissed any and all claims by plaintiff against the University," and as such "there are no claims in the case against the University, and thus no basis to order any sort of relief against" it. Dkt. No. 94. The Court accordingly disregards arguments related to the University.

Second, the parties' briefing includes arguments regarding the defendants' *Daubert* challenge to the admissibility of testimony and opinions from the plaintiff's proffered experts, Douglas Duncan and Aryeh Siegel. *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993). Though the Court "must make the necessary factual and legal inquiries and decide all relevant contested issues prior to certification," *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010), it need only rule on *Daubert* challenges prior to ruling a class certification motion when the "expert's report or testimony is critical to class certification." *Id.* at 816-17. Neither Duncan nor Siegel have offered evidence that is critical to class certification. The Court does not rely on their submissions in rendering its decision and thus need not, and does not, undertake a *Daubert* analysis at this juncture.

## A.    Rule 23(a)

"[C]lass certification is not an all-or-nothing proposition. Certification may be appropriate as to some of the class's claims but not others." *Simpson v. Dart*, 23 F.4th 706, 713 (7th Cir. 2022). Thus district courts "should begin by identifying the elements of the plaintiff's various claims." *Id.* Hudgins's remaining claims are for violations of the Constitution's Establishment Clause and Free Exercise Clause.

The Establishment Clause "prohibits . . . any law 'respecting an establishment of religion.'" *Freedom From Religion Found., Inc. v. Concord Cmty. Sch.*, 885 F.3d 1038,

1045 (7th Cir. 2018) (quoting U.S. Const. amend. I, cl. 1).  A plaintiff with an Establishment Clause claim "must indicate in which way the government has transgressed the Constitution: through impermissible endorsement of a religious view, through coercion, or through a forbidden religious purpose."  *Mayle v. United States*, 891 F.3d 680, 684 (7th Cir. 2018).

The Free Exercise Clause proscribes laws that "'prohibit[ ] the free exercise' of religion.'"  *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022) (quoting U.S. Const. amend. I).  This Clause protects both "the right to harbor religious beliefs inwardly and secretly," as well as "to live out [one's faith] in daily life through 'the performance of (or abstention from) physical acts.'"  *Id.* (quoting *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 877 (1990)).  A plaintiff may demonstrate a Free Exercise violation "by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'"  *Id.* (quoting *Smith*, 494 U.S. at 881).

The Court does not take note of the differing elements in the Establishment and Free Exercise claims—particularly the endorsement, coercion or forbidden purpose elements under the Establishment Clause, and, under the Free Exercise Clause, the element of a burden upon a sincere religious practice—for the sake of assessing the merits of Hudgins's claims in this case.  "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).  Rather, it is because "by properly circumscribing the claims and breaking them down into their constituent elements," the Court can then "decide which issues are common, individual, and predominant."

*Santiago v. City of Chicago*, 19 F.4th 1010, 1018 (7th Cir. 2021).

### 1.    Class definition

The Court first addresses the defendants' challenge to the definition of Hudgins's proposed class.  Rule 23 requires a class to be "defined."  Courts have determined that this includes an implicit requirement that the class be ascertainable—"defined clearly and based on objective criteria."  *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).  The focus is "on the adequacy of the class definition itself" rather than whether "it would be difficult to identify particular members of the class."  *Id.*

Hudgins has proposed defining the class to include "[a]ll students who participated in the Quiet Time program in Chicago Public Schools during Chicago Public School's [sic] academic calendar for 2015-16, 2016-17, 2017-18, and 2018-19."  Pl.'s Mot. For Class Cert. at 1.  She further proposes to certify as a subclass the control group of "Quiet Time non-meditators"—students who participated in Quiet Time but were not trained in Transcendental Meditation.  *Id.* at 16.

The defendants argue that the proposed definition is "overbroad" for two reasons.[1]  The first is that it includes students in the Quiet Time program who did not learn or participate in Transcendental Meditation.  The second is that, by including academic calendar years as far bas as 2015, the proposed definition includes persons whose claims are barred by the applicable statute of limitations.  Neither argument

---

[1] To the extent the defendants intend to suggest that Hudgins erred by not including a proposed class definition in her complaint or amended complaint, they are incorrect. *See* Defs.' Mem. in Opp. To Cert. at 26 ("Here, neither Plaintiff's Complainant [sic] nor her First Amended Complaint purports to define the putative class.").  "A complaint must contain three things: a statement of subject-matter jurisdiction, a claim for relief, and a demand for a remedy.  Class definitions are not on that list."  *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) (citation omitted).

provides an adequate basis to deny class certification.

In the defendants' view, it is the "practice of [Transcendental Meditation] that Plaintiff contends is religious and violates the Constitution." Defs.' Mem. in Opp. To Cert. at 26. They argue that, as a result, defining the class to include "all students who participated in the Quiet Time program"—including those who were not trained in Transcendental Meditation—"impermissibly includes students who could not have suffered the harm" Hudgins seeks to redress. *Id.* Their argument construes the claims in this case too narrowly.

The alleged harm at issue in this case is not properly confined to the "practice" of Transcendental Meditation, as defendants suggest. To be sure, the teaching and practice of Transcendental Meditation forms the basis of Hudgins's Free Exercise claim. But her Establishment Clause claim is based on allegations that, through the Quiet Time program, CPS "endorse[d]" a set of religious practices and effectively coerced students into participation. Compl. ¶¶ 138-39. This claim does not require that Hudgins or other students themselves "practiced" the alleged religion or religious activity. In particular, as the Seventh Circuit has stated, "[t]he concern is that religious displays in the classroom tend to promote religious beliefs, and students might feel pressure to adopt them." *Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 851 (7th Cir. 2012). So, although it is true that a class "defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct" is not appropriate for certification, that is not the situation here. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012). Students who did not participate in Transcendental Meditation still could have suffered

harm from the alleged coercion and endorsement.

The defendants' second contention, regarding the statute of limitations, has more merit. Several factors affect considerations of the statute of limitations in this case. First, the Quiet Time program and training of students in Transcendental Meditation in Chicago Public Schools began in 2015 and concluded at the end of the 2018-19 school year. The statute of limitations period governing claims by Illinois residents under 42 U.S.C. § 1983 is two years. Thus under normal circumstances, the statute of limitations would have run on any claim arising from the Quiet Time program at some point in 2021. In Illinois, however, a person who was a minor at the time the cause of action accrued can bring a claim within two years of their eighteenth birthday. 735 ILCS 5/13-211(a). This is of particular import here, as most high school students are under the age of eighteen.

Second, a plaintiff in a related case, *Williams v. Board of Education of the City of Chicago*, Case No. 1:20-cv-04540, first brought a putative class suit against the defendants on substantially similar claims in July 2020. Commencement of the *Williams* case "toll[ed] the running of the statute [of limitations] for all purported members of the class" until this Court denied Williams's class certification motion on September 13, 2022. *China Agritech, Inc. v. Resh*, 584 U.S. 732, 739 (2018). Because of the tolling, the statute of limitations for putative members of the *Williams* class whose claims would otherwise be time-barred was extended by the period of time the class suit was pending. *Id.* at 744. This extension, however, "address[es] only putative class members who wish to sue individually." *Id.* at 739. A plaintiff whose claim is otherwise time-barred may not bring their claim as a new class action. *Id.* at 740.

8

The class-action-related tolling analysis has no effect on the plaintiff or putative class members in the present case whose claims are timely irrespective of the *Williams* litigation, including those who were minors until a date within two years of the filing of Hudgins's suit.  Hudgins falls into this category—because she turned eighteen in April 2021, her claim would not be barred by the statute of limitations as long as it was filed before her birthday in April 2023, and she was free to assert a putative class claim. Hudgins filed the present suit on January 13, 2023.

The defendants contend, however, that because Hudgins's proposed class definition does not impose parameters based on whether a putative class member's individual claim is timely, the definition is overbroad, requires several levels of individual inquiry into the putative class, and cannot be amended by the Court.  The Court disagrees.

Only one question need be asked to determine whether a putative class member's claim is timely—whether the class member turned eighteen on or after January 13, 2021.  Because the Quiet Time program concluded at the end of the 2018-2019 school year and the ordinary statute of limitations for section 1983 claims is two years, the only putative class members with timely claims for the purposes of this action are those who reached the age of majority within two years of the action's filing date.[2]

---

[2] Though the *Williams* litigation tolled the statute of limitations for some putative class members whose claims were otherwise time-barred, it did so only for individual suits they might have brought following the denial of class certification in that case.  Nothing in *China Agritech* indicates a putative class member's otherwise time-barred claim that can be brought because of tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), may be asserted in a new class action, even if that putative class action is timely filed by the named plaintiff.  *See China Agritech*, 584 U.S. at 740 ("The 'efficiency and economy of litigation' that support tolling of individual claims do not support maintenance of untimely successive class actions") (citation omitted).

9

The instant case was filed on January 13, 2023.

The Court is "not persuaded that plaintiff's proposed class is so overly broad as to require denial of certification in this case." *Messner*, 669 F.3d at 825. "[T]he obligation to define the class falls on the judge's shoulders under Fed. R. Civ. P. 23(c)(1)(B)." *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015). Accordingly, district courts "ha[ve] the authority to modify a class definition at different stages in litigation." *In re Motorola Sec. Litig.*, 644 F.3d 511, 518 (7th Cir. 2011).

Rather than "flatly denying class certification," *Messner*, 669 F.3d at 825, the Court exercises its discretion to revise the class definition as follows:

> All students who (i) participated in the Quiet Time program in Chicago Public Schools during Chicago Public School's academic calendar for 2015-16, 2016-17, 2017-18, and 2018-19, and (ii) reached the age of eighteen on or after January 13, 2021.

The Court reviews the remaining Rule 23 requirements with this definition and the uncontested subclass in mind.

### 2. Numerosity

To satisfy numerosity, Hudgins must show that the proposed "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This "does not require a plaintiff to identify the exact number of class members at the certification stage." *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 778 (7th Cir. 2021). But the plaintiff must offer more than "mere speculation or conclusory allegations as to the size of the putative class." *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008). In the Seventh Circuit, "a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020) (quoting *Mulvania*, 850 F.3d at 859).

Hudgins estimates that the proposed class size, including both the Transcendental Meditation and control group students, would range from 2,000 to 3,000 individuals. The defendants' argument that this is mere speculation unsupported by evidence on the size of the potential class is without merit. The plaintiffs cite, as an example, the "Research Review Board Modification a& Continuing Review Application" that the University of Chicago submitted to the school district in 2017. Pl.'s Reply Br., Ex. 9. It estimates that 2,800 students would be enrolled in the Quiet Time program over the course of the 2017-2018 school year, with 1,400 students in Transcendental Meditation and 1,400 non-meditating students. *Id.* Even if one accounts for the likelihood that a reasonably significant number of those students may have turned eighteen before January 13, 2021, Hudgins still has sufficiently established that the remaining members are sufficiently numerous.[3]

### 3. Commonality

Commonality under Rule 23(a)(2) requires the plaintiff to show that "there are questions of law or fact common to the class." To satisfy commonality, the "claims must depend upon a common contention that is capable of class-wide resolution." *Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 434 (7th Cir. 2015). That is, the truth or falsity of the common contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "For purposes of Rule 23(a)(2) even a single

---

[3] Most of the youngest students attending high school in 2017-2018—ninth graders— would have turned eighteen in 2022. Assuming they account for one quarter of the estimated 2,800 students, those 700 students alone is far more than required to make joinder impracticable.

common question will do." *Id.* at 359 (cleaned up). "The critical point is 'the need for *conduct* common to members of the class.'" *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (quoting *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014)).

Hudgins's claims involve questions of law and fact that arise from conduct by the defendants that is common across the proposed class—their implementation of the Quiet Time program. The program is claimed to have been mandatory and implemented uniformly across the participating schools. Students who participated in Transcendental Meditation were taught the same practices in the same way—involving uniform initiation ceremonies and the repetition of mantras. Students who did not learn Transcendental Meditation were still present for the meditation sessions and exposed to recruitment efforts. These allegations create significant common questions of fact and law. Regarding the Establishment Clause claim, an example of a common issue would be whether the acts amount to CPS endorsing or favoring a religion or religious practice. Regarding the Free Exercise Clause claim, an example would be whether the policies governing program implementation were neutral toward religion or generally applicable.

As a result, the Court concludes that the commonality requirement is satisfied for the proposed class and subclass.

### 4. Typicality

Rule 23(a)(3) requires the plaintiff to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that

gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 605 (7th Cir. 2021) (quoting *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998)).  Typicality "may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members" as long as the "claims have the same essential characteristics." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009).

Hudgins argues that her claims are typical of those of the class because they arise from the same course of conduct—the implementation of the Quiet Time program and training students in Transcendental Meditation at CPS.  As described in the commonality section, Hudgins has alleged a uniform course of conduct regarding the adoption and implementation of the program that has given rise to her claims and those of the class members.  However, whether Hudgins's claim is typical of members of the proposed subclass—who were not trained in Transcendental Meditation—warrants additional scrutiny and highlights the difference between the Establishment Clause and Free Exercise Clause claims.

Hudgins was trained in Transcendental Meditation and participated in it for at least a period of time she attended Bogan High School.  This means she experienced the initiation ceremony, was given a mantra, and was led through meditations.  Students in the subclass did not experience the initiation ceremony or receive a mantra.  They were, however, present for meditations during Quiet Time, and they were exposed to program ambassadors and other recruitment efforts.  The defendants argue that these differences in participation in Transcendental Meditation mean Hudgins's claims cannot be typical of the claims of the members of the subclass.  The defendants are only

partially correct.

Hudgins's Establishment Clause claim largely turns on whether the Board impermissibly endorsed a religious view or coerced (or misled) students to support or participate in religion. *See Mayle*, 891 F.3d at 684. The legal theory underlying this contention is the same for students who participated in Transcendental Meditation and those who did not. Hudgins alleges that the Board initiated the mandatory Quiet Time program and offered and recruited students to participate in Transcendental Meditation. She contends that in doing so the Board created a baseline level of exposure and coercion across the student body. The Court is satisfied that Hudgins's Establishment Clause claim is typical of the Establishment Clause claims of both the proposed class and the subclass.

Matters are different for her Free Exercise Clause claim. The Free Exercise claim requires that the district burdened the plaintiff's sincerely held religious beliefs. *See Kennedy*, 597 U.S. at 524. Hudgins alleges that a substantial part of the burden came from aspects of the program that affected only students who received Transcendental Meditation training—in particular, the initiation ceremony and the mantra. Her Free Exercise claim is thus largely premised on a course of conduct that differs from what members of the proposed subclass of Quiet Time non-meditators experienced. Though factual distinctions between the named plaintiff and class members are not always dispositive, in this instance Hudgins and members of the subclass do not share "the same essential characteristics" with respect to their Free Exercise claims. *Muro*, 580 F.3d at 492. Separating these students into the subclass Hudgins proposes does not mitigate this fundamental discrepancy; her Free Exercise

claim is not typical of the claims of the subclass. And without Hudgins, there is no representative for the subclass. For these reasons, the Court cannot appropriately certify a Free Exercise subclass of students who were not trained in Transcendental Meditation.

The Court notes, however, that a Free Exercise Clause subclass consisting of only students who *were* trained in Transcendental Meditation would satisfy the typicality requirement. Because these students received a mantra and experienced the initiation and other matters specific to the training program, their Free Exercise claims would share the same essential characteristics as that of Hudgins. Hudgins has not proposed this, but the Court will assess it nonetheless.

The Court thus concludes that Hudgins's Free Exercise claim is not typical of the entire class or the proposed subclass of students not trained in Transcendental Meditation. However, because it would be typical of a subclass of students who were trained in Transcendental Meditation, the Court continues the Rule 23(a) analysis with that in mind alongside the Establishment Clause claim.

### 4. Adequacy of representation

The last requirement under Rule 23(a) is that the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing adequacy, a court evaluates "the adequacy of the named plaintiffs as representatives of the proposed class's myriad members" and "the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

### a. Adequacy of class counsel

When appointing class counsel the Court must consider, among other things, "the work counsel has done in identifying or investigating potential claims," their experience with "class actions, other complex litigation, and the types of claims asserted," their "knowledge of the applicable law," and "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

The defendants contend that Hudgins's counsel are not adequate to represent the class, largely focused on their relative lack of experience with class actions and with strategy and other decisions they have made during this and the related *Williams* case. The Court does not find these contentions persuasive. Though Hudgins's counsel may not have handled class actions previously, they have litigated other complex cases and a variety of civil rights claims. They have also demonstrated commitment to investigating the claims throughout this and related litigation, and they have a track record of committing resources to its resolution.

The defendants also argue that Hudgins's counsel are inadequate because of the representation agreement they entered into with Williams in his related case. That agreement gave control of the litigation, including the ability to settle, to a steering committee that counsel participated in, rather than to Williams. Because Williams had ceded control of the litigation, the Court determined that he was not an adequate class representative and denied class certification in his case on that basis. The defendants argue that the *Williams* representation agreement violated the Rules of Professional Conduct and rendered Hudgins's counsel inadequate to represent the class proposed in this case.

16

When reviewing misconduct allegations in this context, the Court asks whether the "behavior creates serious doubt that class counsel will represent the class loyally." *Reliable Money Ord., Inc. v. McKnight Sales Co.*, 704 F.3d 489, 495 (7th Cir. 2013). In the Court's view, the conduct at issue here does not create such doubt. Whatever one might say about the representation agreement in the Williams case, Hudgins's counsel are not operating under that agreement or under one that has similar terms. Nor have they engaged in any other conduct that would call their loyalty to the class into question.

The Court finds that proposed class counsel are adequate.

### b. Adequacy of the named plaintiff

The "named plaintiff must be a member of the putative class and have the same interest and injury as other members." *Santiago*, 19 F.4th at 1018 (quoting *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1027 (7th Cir. 2018)). A "named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative." *Stampley v. Altom Transp., Inc.*, 958 F.3d 580, 585 (7th Cir. 2020) (internal quotation marks omitted).

The defendants identify two provisions of the representation agreement between Hudgins and her counsel that they contend make her an inadequate class representative. The first is a tern stating that if counsel "is unable to contact client within a reasonable time because Client failed to inform the Firm in writing of changes to name, address, email address or phone number, the Firm shall have and is hereby granted the power of attorney to settle the claim on Client's behalf." Defs' Mem. in Opp. To Cert., Ex. 18. The second is a disclaimer that "it is the policy and practice of the Firm to recommend denial of any settlement that does not include recovery which the

17

Firm considers adequate of the attorneys' fees, costs and expenses" they incurred. *Id.*

The defendants argue the first provision reflects a "complete surrender of control" and "unwillingness to monitor the conduct of her counsel to protect the class." *Id.* at 38. That is a wild overstatement. The defendants point to nothing in the record that reasonably suggests that Hudgins might become unavailable or any conduct that suggests she is not committed to pursuing the litigation and carrying out her responsibilities as class representative. The fact that she is on probation is of no consequence, and in the Court's view, the defendants' citation of that as a supposedly critical fact regarding adequacy borders on attempted character assassination. The Court also notes, in this regard, that once a class is certified it *cannot* be settled without approval by the Court, a process that is carefully circumscribed by Rule 23(e). Nor does anything in the second provision indicate a "ceding of control" by Hudgins to her counsel. *Id.* at 39. Rather, it is better viewed as an admonition by counsel regarding their general policy toward advice on settlement of a plaintiff's claims—advice that a plaintiff may take or disregard.

The defendants have otherwise gone to great lengths in their attempt to undermine Hudgins's credibility and her adequacy to represent the class in this litigation. The Court is similarly unpersuaded. That Hudgins may have learned that the alleged initiation ceremony she went through was called a "Puja" after litigation commenced does nothing to undermine her credibility. There is no requirement that one's vocabulary remain unchanged throughout the course of litigation. And any inconsistencies the defendants claim to identify between Hudgins's declaration and deposition testimony are minor and reflect the subjective nature of all witness testimony.

18

They are not indicative of the type of credibility issues that could warrant a determination that she is not an adequate class representative.

Finally, the Court notes that the defendants have not identified any individual defenses that would make Hudgins an inadequate representative for either the Establishment Clause or Free Exercise Clause claims. As described previously, though Hudgins was taught Transcendental Meditation, for purposes of the Establishment Clause claim, the conduct and underlying injury are the same as for students who were not taught Transcendental Meditation. The same is true of a Free Exercise subclass of students who were trained in Transcendental Meditation—the conduct and underlying injury are the same.

## B.     Rule 23(b)(3)

The Court now turns to the requirement that the proposed class satisfy one of the branches of Rule 23(b). *See Mulvania*, 850 F.3d at 859. Hudgins seeks certification only under Rule 23(b)(3). Certification under Rule 23(b)(3) requires the plaintiff to show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.     Predominance

"The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Santiago*, 19 F.4th at 1016 (quoting *Beaton*, 907 F.3d at 1029). The "predominance requirement is satisfied when common questions represent a significant aspect of a case and can be

resolved for all members of a class in a single adjudication." *Messner*, 669 F.3d at 814. "Individual questions need not be absent"; the rule "requires only that those [individual] questions not predominate over the common questions affecting the class as a whole." *Id.* at 815.

The Court begins, again, "with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011) (quotation omitted). As stated previously, a Free Exercise claim requires a showing that the defendant burdened the plaintiff's sincerely held religious beliefs. *See Kennedy*, 597 U.S. at 524. Even limiting the analysis to a subclass of students who received training in Transcendental Meditation, such a class does not satisfy the predominance requirement. The defendants appropriately point out that adjudicating the putative class members' Free Exercise Claims would require individual inquiry into the students' religious beliefs, if any, and whether Transcendental Meditation burdened those beliefs. Although the predominance element does not require that individual questions are entirely absent, this line of inquiry and the likely individualized damages inquiry (which the Court addresses later) represents a significant aspect of the analysis on a Free Exercise claim. The Court therefore finds that common questions do not predominate with respect to this claim. As a result, the proposed Free Exercise class, whether assessed as the full class or any variation of subclass proposed thus far, does not satisfy Rule 23(b)(3) and cannot be certified.

Turning to the Establishment Clause claim, a plaintiff "must indicate in which way the government has transgressed the Constitution: through impermissible endorsement of a religious view, through coercion, or through a forbidden religious purpose." *Mayle*,

891 F.3d at 684.

A significant and important aspect of the Establishment Clause claim in this case—whether the government impermissibly endorsed a religious view and/or coerced students to support or participate in religion—is subject to resolution on a classwide basis.  As discussed in the typicality section of this opinion, it appears that the Quiet Time program was implemented and facilitated uniformly across participating Chicago Public Schools.  And all students in the Quiet Time program were exposed to Transcendental Meditation, even if they did not participate in it.

The defendants argue that common questions do not predominate over individual questions because "[c]oercion in the context of the First Amendment is a highly subjective and individualized inquiry."  Defs' Mem. in Opp. To Cert. at 45.  But this contention ignores Hudgins's allegations relating to endorsement of a religious practice, and they misconstrue the nature of the alleged coercion.  "It is a mistake to view the coercion at issue . . . as divorced from the problem of government endorsement of religion in the classroom generally," as the defendants do in their brief.  *Elmbrook*, 687 F.3d at 855.  "When the power, prestige and financial support of government is placed behind a particular religious belief, the indirect coercive pressure upon religious minorities to conform to the prevailing officially approved religion is plain."  *Id.* (quoting *Wallace v. Jaffree*, 472 U.S. 38, 60 n.51 (1985)).  Understood this way, the question of whether the school district's acts were coercive for the purposes of determining liability does not require individualized inquiry.

The Court acknowledges that there may be differences in damages as between students who were taught Transcendental Meditation and those who were not, or

students who claim they succumbed to coercion and those who do not.  And contrary to Hudgins's suggestion, the Court is not convinced a rote formula is likely to provide a solution in this case.  *See* Pl.'s Mot. For Class Cert. at 30.  Even so, "[r]ecognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 42 (2013).  Where, as in this case, the "adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate."  *Id.* at 41.  One way of handling this, expressly contemplated by Rule 23(c)(4), would be to limit the class to the determination of the defendants' liability, leaving the determination of damages and related matters for individual proceedings.  *See, e.g., Arreola*, 546 F.3d at 800-01.  This point may be addressed and revisited as the case proceeds.

For the reasons described, the Court finds that the predominance requirement is satisfied with respect to the Establishment Clause claims but not the Free Exercise claims.

### 2.    Superiority

The final requirement under Rule 23(b)(3) is that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  This applies to "cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

Because common questions regarding liability predominate, as discussed in the

preceding section, the Court is satisfied that class litigation will achieve economies of time, effort, expense, and uniformity in resolution of the claims of the class members. The superiority requirement is therefore satisfied for the Establishment Clause claim.

The Court also notes that because the requirements of Rules 23(a) and 23(b)(3) have been met for the Establishment Clause claim under the full class definition, there is no need to certify the proposed subclass of students who did not receive Transcendental Meditation training.

### Conclusion

For the foregoing reasons, the Court grants the plaintiff's motion for class certification [dkt. no. 74] in part, as follows. With regard to the Establishment Clause claim, the Court certifies a class of plaintiffs consisting of all students who (i) participated in the Quiet Time program in Chicago Public Schools during Chicago Public School's academic calendar for 2015-16, 2016-17, 2017-18, and 2018-19, and (ii) reached age eighteen on or after January 13, 2021. The Court appoints attorneys John Mauck, Judith Kott, Robin Rubrecht, and Sorin Leahuas class counsel. The Court denies the plaintiff's motion for class certification with regard to the Free Exercise claim.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 19, 2024